Michael S. Blanton (SB# 190148)
mblanton@rrbllp.com
ROBERTS, RASPE & BLANTON LLP
Union Bank Plaza
445 South Figueroa Street
Suite 3200
Los Angeles, California 90071
Telephone: (213) 430-4777
Facsimile: (213) 430-4780

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

Attorneys for Defendants Lime Wire LLC;
Lime Group LLC; Mark Gorton; and M.J.G.
Lime Wire Family Limited Partnership

FILED
CLERK, U.S. DISTRICT COURT
DEC - 9 2010
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Arista Records LLC; Atlantic Recording Corporation; BMG Music; Capitol Records, Inc.; Elektra Entertainment Group Inc.; Interscope Records; Laface Records LLC; Motown Record Company, L.P.; Priority Records LLC; Sony BMG Music Entertainment; UMG Recordings, Inc.; Virgin Records America, Inc.; and Warner Bros. Records Inc., <br><br> Plaintiff, <br><br> v. <br><br> Lime Wire LLC; Lime Group LLC; Mark Gorton; and M.J.G. Lime Wire Family Limited Partnership, <br><br> Defendants. | CASE NO. **CV10-9438** GW (PJW) <br><br> **DECLARATION OF DAN C. KOZUSKO IN SUPPORT OF PETITION TO ENFORCE CENTRAL DISTRICT NON-PARTY SUBPOENA TO MEDIADEFENDER, INC.** <br><br> (United States District Court For the Southern District Of New York, Civil Action No.: 06 CV 5936 (KMW), Honorable Kimba M. Wood, U.S.D.J.) |

**DECLARATION OF DAN C. KOZUSKO IN SUPPORT OF PETITION TO ENFORCE CENTRAL DISTRICT NON-PARTY SUBPOENA TO MEDIADEFENDER, INC.**

I, Dan C. Kozusko, declare as follows:

1. I am a member of the bar of the United States District Court for the Southern District of New York and an attorney with the law firm of Willkie Farr & Gallagher LLP ("Willkie Farr"). This law firm represents Lime Group LLC, Lime Wire LLC, Mark Gorton, and M.J.G. Lime Wire Family Limited Partnership (collectively, "Defendants") in the above-captioned action pending in the Southern District of New York.

2. I have personal knowledge of the facts set forth below. I submit this Declaration in support of Defendants' Petition to Enforce a Central District Subpoena to Non-Party MediaDefender, Inc. ("MediaDefender"). Willkie Farr's efforts to meet and confer with MediaDefender, which has remained unrepresented by counsel, are set out in paragraphs 7, 9 – 18, 20, and 22 – 23. Because MediaDefender has remained unrepresented by counsel throughout the meet-and-confer process, no Local Rule 37-2 Joint Stipulation is included with Defendants' Petition to Enforce Non-Party Subpoena.

3. By way of background, the above-captioned action is scheduled for trial on April 25, 2011, before the Honorable Kimba M. Wood of the United States District Court for the Southern District of New York. That trial concerns the amount of statutory damages that Plaintiffs may recover from Defendants on the basis of Judge Wood's grant of summary judgment finding Defendants' liable for

1

**DECLARATION OF DAN C. KOZUSKO IN SUPPORT OF PETITION TO ENFORCE CENTRAL DISTRICT NON-PARTY SUBPOENA TO MEDIADEFENDER, INC.**

copyright infringement by individual users of the LimeWire peer-to-peer file-sharing service.

4. The parties are currently engaged in discovery to prepare for that trial. Judge Wood has appointed the Honorable Debra Freeman, United States Magistrate Judge for the Southern District of New York, to supervise discovery. Judge Wood recently extended the deadline for the conclusion of fact discovery to the end of January 2011. That deadline had previously been set to expire last month.

5. In connection with that discovery process, Defendants, on or about September 22, 2010, served on MediaDefender a subpoena issued by this Court, which requested the production of documents and testimony at a deposition (the "Subpoena"). A true and correct copy of the Subpoena is attached hereto as Exhibit 1. In addition to MediaDefender, Defendants, on or about that same day and periodically thereafter, served subpoenas on a number of other non-parties whom they believed to be in possession of information relevant to the issues to be tried before Judge Wood.

6. On September 27, 2010, Plaintiffs' counsel made a letter application to Judge Freeman in which they asked the Court to quash Defendants' subpoenas to MediaDefender and those to all other non-parties, as purportedly beyond the scope of discovery permitted by Judge Wood.

2

**DECLARATION OF DAN C. KOZUSKO IN SUPPORT OF PETITION TO ENFORCE CENTRAL DISTRICT NON-PARTY SUBPOENA TO MEDIADEFENDER, INC.**

7.     On or about September 28, 2010, my colleague, Mary Eaton, spoke with Michael Allen of MediaDefender regarding the Subpoena. Mr. Allen stated that he had assembled documents in MediaDefender's possession, custody, or control that were responsive to the Subpoena and was ready to send them to Defendants' counsel via FedEx and asked Willkie Farr to supply its FedEx account number for billing, which was provided promptly to Mr. Allen.

8.     On September 29, 2010, Judge Freeman conducted a telephonic oral argument on Plaintiffs' letter application, in which she took the matter on submission. In the interim, Judge Freeman stated that none of the subpoenaed parties were under any obligation to comply with the subpoenas, but did not prohibit them from doing so voluntarily.

9.     Following that hearing, Plaintiffs' counsel reached out to MediaDefender and other non-parties whom Defendants had subpoenaed to inform them of Judge Freeman's statement and to request that they not comply with the subpoenas voluntarily until Judge Freeman issued a ruling. On information and belief, MediaDefender, as a result of that communication from Plaintiffs' counsel, decided not to produce voluntarily the responsive documents that it had already assembled and was about to produce to Defendants before Plaintiffs moved to quash Defendants' subpoenas.

10.    In a decision and order, dated October 15, 2010, a true and correct copy of which is attached hereto as Exhibit 2, Judge Freeman denied

3

**DECLARATION OF DAN C. KOZUSKO IN SUPPORT OF PETITION TO ENFORCE CENTRAL DISTRICT NON-PARTY SUBPOENA TO MEDIADEFENDER, INC.**

Plaintiffs' motion to quash in its entirety. The next business day, I telephoned Mr. Allen at MediaDefender to inform him of Judge Freeman's ruling and to inquire when the previously collected responsive documents would be produced. Mr. Allen represented to me that those documents remained ready to go and that he would produce them as soon as his boss authorized him to do so. After hearing nothing from Mr. Allen nor receiving any documents from MediaDefender, I telephoned Mr. Allen again on October 20. Mr. Allen reiterated that he was still awaiting authorization from his boss to send out the documents, but that he would send those documents to me by FedEx as soon as he received the requisite approval from his boss. At no time did Mr. Allen suggest to me that his boss' approval of that production was anything other than a formality.

11. Six days passed, but I again did not hear back from Mr. Allen, nor did Defendants receive any documents from MediaDefender. As a result, I telephoned Mr. Allen again on October 26 and left him a voicemail inquiring as to the status of MediaDefender's document production and asked that he contact me promptly, as the close of fact discovery was then fast approaching.

12. The following day, Teri Rowland, MediaDefender's Controller, sent a letter to my colleagues, Mary Eaton and Paul Horan, regarding the Subpoena. In that letter, a true and correct copy of which is attached hereto as Exhibit 3, Ms. Rowland stated that "We have reviewed our records and the only documents that we could produce are contracts between our company

4

MediaDefender, Inc. and its customers. However, these contracts do contain sensitive and confidential information that we do not think are relevant nor appropriate to your case, and we would like to understand why you believe they should be produced under these circumstances."

13. I responded to Ms. Rowland's letter the next day, October 28, 2010. I explained to Ms. Rowland why those documents were relevant and that any concerns MediaDefender might have with regard to the production of confidential and/or sensitive information could be resolved by designating those documents as "confidential" or "attorneys' eyes only" under the terms of the Court's protective order. I attached a copy of that protective order to my letter to Ms. Rowland and inquired again when Defendants could expect to receive the document production that MediaDefender had promised to provide to Defendants some time ago. A true and correct copy of my October 28, 2010 letter to Ms. Rowland is attached hereto as Exhibit 4.

14. Two days passed, but I did not hear back from Ms. Rowland. During that time, Defendants also learned that numerous responsive e-mails of MediaDefender, including ones concerning LimeWire, were readily available on the internet, yet Ms. Rowland had stated that MediaDefender's agreements with Plaintiffs were the only responsive documents in its possession, custody, or control. Accordingly, on October 30, 2010, I wrote Ms. Rowland to inquire about the status of MediaDefender's document production and to inform her of the

5

existence of these e-mails and Defendants' expectation that any such responsive e-mails in MediaDefender's possession, custody, or control would be produced, consistent with the terms of the Subpoena. I also asked Ms. Rowland to supply a deposition date for a MediaDefender representative, preferably its CEO, given that the then-November 15, 2010 fact discovery cutoff was fast approaching. A true and correct copy of my October 30, 2010 e-mail to Ms. Rowland is attached hereto as Exhibit 5.

15. On November 1, 2010, MediaDefender's CEO, Dimitri Villard, responded to my October 30 e-mail to Ms. Rowland. Mr. Villard stated that MediaDefender "do[es] not archive e-mails" and therefore could not produce the e-mails referred to in my October 30 e-mail because MediaDefender "no longer possesses" them. Mr. Villard also disputed the relevance of the documents that his colleagues had previously agreed to produce on more than occasion. Specifically, Mr. Villard denied that the contracts between MediaDefender and Plaintiffs, pursuant to which MediaDefender "provides anti-piracy services," were relevant here. Finally, Mr. Villard asserted that "[d]espite the Protective Order, we are concerned that the information contained in our confidential service agreements might nevertheless become known, as is often the case, and we will oppose any demand to produce them on the grounds of confidentiality as well as relevance." A true and correct copy of Mr. Villard's November 1, 2010 e-mail to me is attached hereto as Exhibit 6.

6

**DECLARATION OF DAN C. KOZUSKO IN SUPPORT OF PETITION TO ENFORCE CENTRAL DISTRICT NON-PARTY SUBPOENA TO MEDIADEFENDER, INC.**

16. On November 3, 2010, I responded to Mr. Villard's e-mail. I reiterated Defendants' expectation that MediaDefender would produce any e-mails responsive to the Subpoena that are in its possession, custody, or control, as the Subpoena requests. I further explained to Mr. Villard why MediaDefender's contracts with Plaintiffs to provide anti-piracy services, together with any related communications, were responsive to the Subpoena, i.e., they related to one or more of the six factors that the Second Circuit requires the Court to take into account when determining the amount of statutory damages that may be awarded for copyright infringement. Lastly, I noted Defendants' belief that the protective order entered by the Court was sufficient to safeguard any confidential information that may appear in MediaDefender's agreements and other documents, especially given that Plaintiffs -- the counterparties to those contracts -- had already produced a significant amount of confidential and proprietary information to Defendants under the terms of that protective order. I explained to Mr. Villard that if MediaDefender chose not to comply with its obligations under the Subpoena, Defendants would have no choice but to move to compel. A true and correct copy of my November 3, 2010 e-mail to Mr. Villard is attached hereto as Exhibit 7.

17. Mr. Villard responded the next day by accusing Defendants of making inconsistent arguments as to why the documents his colleagues had already agreed to produce were relevant and asked Defendants to supply "case law … indicat[ing] that the documents you seek are discoverable." He also inquired

7

DECLARATION OF DAN C. KOZUSKO IN SUPPORT OF PETITION TO ENFORCE CENTRAL DISTRICT NON-PARTY SUBPOENA TO MEDIADEFENDER, INC.

whether Defendants had researched instances where courts have not required a production under these circumstances. A true and correct copy of Mr. Villard's November 4, 2010 e-mail to me is attached hereto as Exhibit 8.

18. Not long after Mr. Villard sent me that e-mail, Judge Wood, in an order, dated November 3, 2010, but not filed until the following day (a true and correct copy of which is attached hereto as Exhibit 9), extended the close of fact discovery to November 26, 2010. Subsequently, in an order dated November 19, 2010, a true and correct copy of which is attached hereto as Exhibit 10, Judge Wood adjourned the trial date of the above-captioned action until April 25, 2011 and extended the deadline to conclude fact discovery until January 30, 2011.

19. On November 23, 2010, Judge Freeman granted Defendants' motion to compel a non-party, VEVO LLC ("VEVO"), to produce documents in response to another subpoena Defendants had served. Defendants' subpoena to VEVO was served at approximately the same time as the one to MediaDefender and is substantially similar to the Subpoena in terms of the types of documents that it requests, e.g., agreements with Plaintiffs and related documentation and communications. In particular, Judge Freeman ordered VEVO to produce its contracts with Plaintiffs, revenue information showing amounts paid by VEVO to Plaintiffs pursuant to those contracts, and communications regarding LimeWire or those contracts (as captured by certain search terms). A true and correct copy of Judge Freeman's order, dated November 23, 2010, is attached hereto as Exhibit 11.

8
DECLARATION OF DAN C. KOZUSKO IN SUPPORT OF PETITION TO ENFORCE CENTRAL DISTRICT NON-PARTY SUBPOENA TO MEDIADEFENDER, INC.

20. On December 3, 2010, I wrote Mr. Villard to inform him that Defendants would be moving to compel in light of MediaDefender's continued refusal to produce documents that are clearly relevant to the factors used to determine the amount of statutory damages that Plaintiffs may recover for copyright infringement. I also supplied Mr. Villard with citation to case law supporting Defendants' position as to relevance -- authority that I had previously cited to his colleague, Ms. Rowland, in my October 28 letter and over the phone to his other colleague, Mr. Allen, earlier that month. I also explained why MediaDefender's refusal to produce documents on confidentiality grounds, notwithstanding the Court's entry of a protective order here, was baseless, and provided additional citations to case law supporting that position. I also confirmed to him that Defendants, prior to serving the Subpoena, complied in full with their obligations under Federal Rule of Civil Procedure 11 and noted that the obligation of locating any case law that may support MediaDefender's arguments rested with MediaDefender and its counsel, not with Defendants. As a result, I reiterated Defendants' request that MediaDefender comply promptly with its obligations under the Subpoena by producing documents and a representative for deposition, noting once again Defendants' willingness to work with MediaDefender here. Absent such compliance, I told Mr. Villard that Defendants would have no option but to resolve these differences through motion practice and that Defendants would

9

DECLARATION OF DAN C. KOZUSKO IN SUPPORT OF PETITION TO ENFORCE CENTRAL DISTRICT NON-PARTY SUBPOENA TO MEDIADEFENDER, INC.

be making such a motion. A true and correct copy of my December 3, 2010 e-mail to Mr. Villard is attached hereto as Exhibit 12.

21. Discovery is set to close on January 31, 2011 and Defendants require MediaDefender's document production well advance of that, in order to allow counsel sufficient time to review those documents for potential use in deposing representatives of Plaintiffs, and certainly sooner than can occur were the motion to be granted under this Court's normal motion timetable (i.e., at least 28 days' advance notice of a hearing, plus the additional time required for the Court to arrive at and draft a written decision on Defendants' motion and for MediaDefender to comply with any such decision). Proceeding on an accelerated timetable is particularly appropriate here in light of MediaDefender's repeated representations that its document production has already been collected and is ready to be transmitted to Defendants' counsel immediately.

22. Accordingly, on December 7, 2010, I e-mailed Mr. Villard to ask if MediaDefender would agree to stipulate to an expedited briefing schedule that the parties could present to this Court to so-order. Defendants proposed that they make the instant motion on or before December 10, that MediaDefender serve all papers in opposition to the motion on or before December 17, and that Defendants serve any reply papers in further support of the motion on or before December 22, with the motion hearing date to be set by the Court as soon

10

DECLARATION OF DAN C. KOZUSKO IN SUPPORT OF PETITION TO ENFORCE CENTRAL DISTRICT NON-PARTY SUBPOENA TO MEDIADEFENDER, INC.

thereafter as possible. A true and correct copy of my December 7 e-mail to Mr. Villard is attached hereto as Exhibit 13.

23. Mr. Villard responded to my December 7 e-mail later that day, a true and correct copy of which is attached hereto as Exhibit 14. In that e-mail, Mr. Villard declined to stipulate to an expedited briefing schedule in connection with Defendants' motion.

24. Attached hereto as Exhibit 15 is a true and correct copy of the redacted first amended complaint in the above-captioned action, dated July 6, 2007.

25. Attached hereto as Exhibit 16 is a true and correct copy of the protective order entered by the Honorable Gerard E. Lynch, then-United States District Judge for the Southern District of New York, in the above-captioned action on March 8, 2007.

26. Attached hereto as Exhibit 17 is a true and correct copy of a page from MediaDefender's website, entitled "Peer-2-Peer Anti-Piracy Solutions."

27. Attached hereto as Exhibits 18, 19, and 20, respectively, are true and correct copies of articles entitled "Leaked Media Defender e-mails reveal secret government project," "The Biggest Ever BitTorrent Leak: MediaDefender Internal E-mails Go Public," and "MediaDefender Laid Bare, Leaks to Continue."

28. Attached hereto as Exhibit 21 is a true and correct copy of an article entitled "Revision3 CEO: Blackout caused by MediaDefender attack."

11

29. Attached hereto as Exhibit 22 is a true and correct copy of an article entitled "Gotcha! New MPAA Site Tries to Trick Users into Illegally Downloading Movies."

30. I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge and belief.

December 8, 2010 in New York, New York

*[signature]*

Dan C. Kozusko

12

DECLARATION OF DAN C. KOZUSKO IN SUPPORT OF PETITION TO ENFORCE CENTRAL DISTRICT NON-PARTY SUBPOENA TO MEDIADEFENDER, INC.