1  Michael S. Blanton (SB# 190148)
   mblanton@rrbllp.com
2  ROBERTS, RASPE & BLANTON LLP
   Union Bank Plaza
3  445 South Figueroa Street
   Suite 3200
4  Los Angeles, California 90071
   Telephone: (213) 430-4777
5  Facsimile: (213) 430-4780

6  WILLKIE FARR & GALLAGHER LLP
   787 Seventh Avenue
7  New York, New York 10019
   (212) 728-8000
8
   Attorneys for Defendants Lime Wire LLC;
9  Lime Group LLC; Mark Gorton; and M.J.G.
   Lime Wire Family Limited Partnership

10             **UNITED STATES DISTRICT COURT**

11            **CENTRAL DISTRICT OF CALIFORNIA**

12

13  Arista Records LLC; Atlantic Recording      ) CASE NO **CV10-9438** (GW
    Corporation; BMG Music; Capitol             )                      (PJWx)
14  Records, Inc.; Elektra Entertainment        )
    Group Inc.; Interscope Records; Laface      ) **DECLARATION OF DAN C.**
15  Records LLC; Motown Record                  ) **KOZUSKO IN SUPPORT OF**
    Company, L.P.; Priority Records LLC;        ) **PETITION TO ENFORCE**
16  Sony BMG Music Entertainment; UMG           ) **CENTRAL DISTRICT NON-PARTY**
    Recordings, Inc.; Virgin Records            ) **SUBPOENA TO**
17  America, Inc.; and Warner Bros.             ) **MEDIADEFENDER, INC.**
    Records Inc.,                               )
18                                              )
           Plaintiff,                           ) **EXHIBITS 2 - 22**
19                                              )
        v.                                      )
20                                              ) (United States District Court For the
    Lime Wire LLC; Lime Group LLC;              ) Southern District Of New York, Civil
21  Mark Gorton; and M.J.G. Lime Wire           ) Action No.:  06 CV 5936 (KMW),
    Family Limited Partnership,                 ) Honorable Kimba M. Wood, U.S.D.J.)
22                                              )
           Defendants.                          )
23

24

25

26

27

28

**DECLARATION OF DAN C. KOZUSKO IN SUPPORT OF PETITION TO
ENFORCE CENTRAL DISTRICT NON-PARTY SUBPOENA TO
MEDIADEFENDER, INC.**

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/15/10

-----------------------------------------------------------

ARISTA RECORDS LLS, et al.,

                        Plaintiffs,

        -against-

LIME GROUP LLC, et al.,

                      Defendants.

-----------------------------------------------------------X

           06 Civ. 5936 (KMW)(DF)

           **ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

      Currently pending before the *Court is Plaintiffs'* motion to quash a number of third-party document subpoenas recently served by Defendants. (*See* Letter to the Court from Glenn D. Pomerantz, Esq., dated Sept. 27, 2010 ("9/27/10 Pomerantz Ltr.") (Dkt. 327).) In addition, during a telephone conference with the Court on September 29, 2010, the parties raised an issue as to whether the types of documents in question would be a proper subject of *party discovery* at this juncture.

      For the *reasons set forth below*, Plaintiffs' motion to quash the subpoenas is denied. As to the appropriate scope of party discovery, the Court finds that *Defendants'* requests to Plaintiffs for the documents being sought – *i.e.,* Plaintiffs' recent license agreements and *communications* regarding licensing – were reasonably made during this phase of discovery, that the requested discovery is relevant to Plaintiffs' damages *claims, and* that Plaintiffs should update their prior production of such information so as to make that production current.

**Exhibit 2**
**Page 439**

## DISCUSSION

During the initial phase of fact discovery in this litigation (a phase which closed on April 18, 2008 (*see* Order, dated Dec. 10, 2007 (Dkt. 52); Order, dated April 1, 2008 (Dkt. 69))), Defendants requested and received from Plaintiffs copies of Plaintiffs' license agreements and related communications with third parties. (9/27/10 Pomerantz Ltr. at 4-5.) Defendants have now served similar discovery requests, directed both to Plaintiffs and third parties, seeking primarily to supplement Plaintiffs' earlier production *with information* generated after the initial production date. Plaintiffs have moved to quash the third-party subpoenas, on the principal ground that the Court has already purportedly ruled that the types of documents requested need not be produced at this time. (*Id.*) More specifically, Plaintiffs appear to argue that the Court has already determined that these types of documents would not be relevant to any matters (including aspects of Plaintiffs' claimed damages) that are the subject of the current phase of discovery. For the same reason, Plaintiffs appear to argue that they should not be required to update their own prior production of license agreements and related materials.

### A.   Standing To Challenge the Subpoenas

As a threshold matter, Plaintiffs have not demonstrated that they have standing to challenge the subpoenas in question. Generally, a party will not have standing to object to a subpoena directed *to a third-party* in the absence of a claim of privilege. *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir.1975); *see also* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed. 2008) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to *the* action, unless the

2

**Exhibit 2**
**Page 440**

objecting party claims some personal right or privilege with regard to the documents sought.")
(footnote *omitted*).

Here, Plaintiffs do not assert any privilege or personal right with regard *to the* documents
sought by Defendants' subpoenas. Rather, in the September 29, 2010 telephonic conference
before the Court, Plaintiffs argued that they have standing *to move* to quash the subpoenas
because, in their view, Defendants' service of those subpoenas effectively violated the Court's
prior Order of August 9, 2010 ("8/9/10 Order") (Dkt. 302). According to Plaintiffs, the Court
held, in that Order, that Defendants were not entitled to discovery of license agreements and
related communications *during the* current phase of discovery.

Yet even assuming that Plaintiffs are correct that a party may have standing to quash a
third-*party subpoena* when it exceeds limits on discovery set by the Court in a prior order (a
proposition for which Plaintiffs have cited no authority), they appear to be *incorrect that* such a
situation exists in this case, as the Court has never actually addressed the right of Defendants to
seek license agreements and related documents, to the extent *those* documents might be relevant
to Plaintiffs' damages claims.

In the Court's August 9, 2010 Order, *the* type of documents now at issue were addressed
by the Court – to the extent they were addressed at all – only in the context of whether
Defendants would be *permitted to* "obtain further discovery related to the copyright misuse
defense." (8/9/10 Order, at 2.) Finding that "Defendants' assertion of a copyright misuse
defense [*did*] not bar any remedy in favor of Plaintiffs in this litigation" (*id.* at 7), the Court
merely held that Defendants were "not entitled to discovery that relates *exclusively* to the
asserted copyright misuse defense" (*id.* (emphasis added)). The parties did not brief, and the

3

Exhibit 2
Page 441

Court did not address, the relevance of any of Defendants' specific document requests to other issues, including damages. Indeed, in its August 9 Order, the Court held that it was, at that time, "premature" to address "[w]hether Defendants may obtain discovery related to 'actual damages' suffered by Plaintiffs as a result of Defendants' infringing conduct." (*Id.* at 2, 5; *but see also id.* at 5 n.5 (noting that Defendants would at least be *entitled* to "some discovery" relating Plaintiffs' claimed actual and statutory damages).) Thus, the Court did not actually decide whether Defendants should be permitted *to obtain* Plaintiffs' license agreements and related communications during this discovery period, and this Court cannot find that Defendants' service of the subpoenas was violative of a Court order.

Consequently, Plaintiffs have offered no viable argument as to why they have *standing to challenge the* subpoenas. On that basis, their motion to quash the subpoenas is denied.

**B.      Potential Party Discovery of Plaintiffs'
          <u>Licenses and Related Communications</u>**

On the question of whether Plaintiffs should be required to update their own prior production of their *license* agreements and communications with third-party licensees or potential licensees, Plaintiffs first argue that this type of discovery should have been – and *was* – was *properly* conducted during the initial phase of discovery, which ended in April 2008. Yet, to the extent that Plaintiffs seek damages for alleged infringements occurring *after that April 2008* date, it is fair and reasonable for Defendants to seek current information related to those claimed damages. Indeed, Plaintiffs seek substantial damages for *Defendants'* conduct over the past two years, and Defendants cannot be faulted for failing to demand information at a previous time, when that information did not yet exist. Thus, *provided the license* information is relevant to Plaintiffs' asserted damages, Plaintiffs should update their prior production.

4

**Exhibit 2
Page 442**

On the issue of relevance, Defendants argue persuasively that Plaintiffs' actual or potential licensing arrangements would be relevant to their claim for common law damages. Lost profits are an appropriate measure of actual damages for common law copyright infringement. *See Pret-A-Printee, Ltd. v. Allton Knitting Mills, Inc.*, No. 81 Civ. 3770, 1982 WL 1788, at *7 (S.D.N.Y. Sept. 16, 1982). Here, Plaintiffs' actual and potential licensing arrangements might shed light on the amount of profits that Plaintiffs would have made, had Defendants' customers downloaded Plaintiffs' copyrighted works from a source authorized by Plaintiffs.

Further, with respect to the relevance of the license information to Plaintiffs' claim of statutory damages, Defendants appropriately cite to *Bryant v. Media Rights Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010), in which the Second Circuit noted that,

> [w]hen determining the amount of statutory damages to award for copyright infringement, courts consider: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Id.* In this case, Defendants argue that Plaintiffs' various licensing arrangements would be directly relevant to the third factor set out in *Bryant – i.e.,* the revenue Plaintiffs may have lost as a result of the claimed infringements. (*See* Letter to the Court from Mary Eaton, Esq., dated Sept. 29, 2010 (Dkt. 328) at 3.) Defendants also argue that both the licenses themselves and Plaintiffs' communications with licensees and potential licensees on the subject of licensing would be relevant to understanding Plaintiffs' "conduct and attitude" (the sixth factor enumerated in *Bryant*) regarding licensing, including their attitude toward Internet companies

5

Exhibit 2
Page 443

which, for various reasons, may have sought to deviate from seemingly standard licensing rates and terms. *Bryant* itself provides little guidance as to the meaning or scope of the "attitude and conduct of the parties" factor, *see Bryant*, 603 F.3d at 144, and the parties have not elaborated on this point. Nonetheless, it is not difficult to see how communications with licensees or potential licensee might illuminate Plaintiffs' attitudes regarding the value of its copyrights and show how Plaintiffs conducted themselves in dealing with others in the Internet marketplace.

Finally, in considering whether the requested discovery should be produced by Plaintiffs, the Court takes two other facts into account: (1) that Plaintiffs did produce the same type of material earlier, and thus are hard-pressed to argue that such material bears no relevance to their claims, and (2) that, as noted above, the amount of damages being sought by Plaintiff – including damages for alleged acts of infringement over the last two years – is *substantial*, which weighs in favor of requiring Plaintiffs to make full production of evidence related to damages, even if burdensome.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to quash the third-party subpoenas (Dkt. 327) is denied, and, in addition, Plaintiffs are directed to produce in discovery their license agreements and related communications with third-party licensees, for the period from April18, 2008 to the present.

Exhibit 2
Page 444

To the extent that, after good faith conference, the parties still need judicial resolution of any other discovery disputes, they are directed to submit a joint letter to the Court, no later than one week from the date of this Order, identifying each dispute that remains extant.

Dated:   New York, New York
         October 15, 2010

                                        SO ORDERED


                                        _____
                                        DEBRA FREEMAN
                                        United States Magistrate Judge


Copies to:

all parties (via ECF)


7

Exhibit 2
Page 445

**EXHIBIT 3**

# EXHIBIT 3



October 27, 2010

Ms. Mary Eaton, Esq. and Mr. Paul Horan, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019

Dear Ms. Eaton and Mr. Horan,

We are in receipt of the Subpoena requesting document production in the matter of Arista Records LLC,
et al. vs. Lime Group LLC, et al. We have reviewed our records and the only documents that we could
produce are contracts between our company MediaDefender, Inc. and its customers. However, these
contracts do contain sensitive and confidential information that we do not think are relevant nor
appropriate to your case, and we would like to understand why you believe they should be produced
under these circumstances.

Sincerely yours,

Teri Rowland
Controller
MediaDefender, Inc.
9046 Lindblade St.
Culver City, CA 90232
(310) 956-3305

Exhibit 3
Page 446

**EXHIBIT 4**

# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

October 28, 2010

**VIA E-MAIL**

Ms. Teri Rowland
Controller
MediaDefender, Inc.
9046 Lindblade St.
Culver City, CA 90232

Re:    *Arista Records LLC, et al. v. LimeWire LLC, et al.*, No. 06 CV 5936 (KMW) (DF)

Dear Ms. Rowland:

I write in response to your letter of yesterday to my colleagues, Mary Eaton and Paul Horan, regarding the subpoena that Lime Group LLC, LimeWire LLC, and Mark Gorton, defendants in the above-captioned action, served on MediaDefender, Inc. (the "Subpoena").

Your letter states that the only documents responsive to the Subpoena in the possession, custody, or control of MediaDefender are "contracts between our company and its customers." You explained that those contracts contain "sensitive and confidential information" and asserted that they are not relevant to the above-captioned action. On that basis, you inquired why those documents should be produced.

We understand MediaDefender's concerns about the production of information that is confidential or proprietary. To alleviate such concerns, the Court has entered a protective order (a copy of which is enclosed herewith) to safeguard such information by allowing MediaDefender to designate appropriate documents in its production as confidential or attorneys' eyes only, for example. With regard to relevance, Judge Freeman has already ruled that licensing agreements between plaintiffs and third-parties such as MediaDefender and any related communications are relevant to two of the factors set forth in *Bryant v. Media Rights Prods., Inc.*, 603 F.3d 135 (2d Cir. 2010), for determining the amount of statutory damages that plaintiffs may recover for copyright infringement, specifically "the revenue lost by the copyright holder" and "the conduct and attitude of the parties." (10/15/10 Order at 5-6.)

In light of that ruling and because the Court's protective order resolves MediaDefender's legitimate concerns over disclosure of confidential or proprietary information, we believe that the Subpoena requires MediaDefender to produce promptly copies of any agreements between it and one or more plaintiffs, together with any related communications. Your colleague, Mike Allen, explained to me

**Exhibit 4**
**Page 447**

NEW YORK  WASHINGTON  PARIS  LONDON  MILAN  ROME  FRANKFURT  BRUSSELS

Ms. Teri Rowland
October 28, 2010
Page 2

last week that those documents had been compiled some time ago and were ready to be produced.
Kindly advise us when we may expect to receive that production from Media Defender.

Very truly yours,

Dan C. Kozusko

Enclosure

Exhibit 4
Page 448

*LYN14,5,*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARISTA RECORDS LLC; ATLANTIC RECORDING
CORPORATION; BMG MUSIC; CAPITOL RECORDS,
INC.; ELEKTRA ENTERTAINMENT GROUP INC.;
INTERSCOPE RECORDS; LAFACE RECORDS LLC;
MOTOWN RECORD COMPANY, L.P.; PRIORITY
RECORDS LLC; SONY BMG MUSIC
ENTERTAINMENT; UMG RECORDINGS, INC.;
VIRGIN RECORDS AMERICA, INC.; and
WARNER BROS. RECORDS INC.,

Plaintiffs/Counterclaim Defendants,

v.

LIME GROUP LLC; MARK GORTON; and GREG
BILDSON,

Defendants,

and

LIME WIRE LLC,

Defendant/Counterclaim Plaintiff.

STIPULATION AND
PROTECTIVE ORDER

06 Civ. 05936 (GEL)

[ECF CASE]

Good cause appearing, and in conformance with the parties' agreement:

IT IS HEREBY ORDERED that this Protective Order pursuant to Rule 26(c) of the
Federal Rules of Civil Procedure be, and is hereby, entered.

1. This Protective Order shall be applicable to and govern all depositions, documents
produced in response to requests for production of documents, answers to interrogatories,
responses to requests for admission, and all other discovery taken pursuant to the Federal Rules
of Civil Procedure, and other information hereafter furnished, directly or indirectly, by or on
behalf of any party or nonparty in connection with this action which that party or nonparty
designates as "Confidential" and which that party or non-party in good faith believes comprise or

Exhibit 4
Page 449

reflect proprietary information used by it in, or pertaining to, its business, which is not generally known and which the party would normally not reveal to third parties or would cause third parties to maintain in confidence, including, without limitation, trade secrets, financial data, contracts and agreements, current and future business plans, and marketing documents. A party may also designate discovery materials provided in this litigation as "Confidential-Attorneys' Eyes Only" when that party has a good faith belief that such materials are particularly sensitive and therefore require a heightened level of protection.[1]

2. Any documents produced in this action that were previously produced in a litigation, investigation or other proceeding shall be treated as "Confidential" if such documents were labeled in that litigation, investigation or other proceeding as "Confidential", "FOIA Confidential Treatment Requested", "Restricted", "Subject to Protective Order" or bear any other designation indicating that their confidentiality should be preserved.

3. Material governed by this Protective Order shall be used by any recipients solely for the purpose of conducting this litigation, and not for any other purpose whatsoever, and such information shall not be disclosed to anyone except as provided herein.

4. Any information or materials produced by any party or nonparty as part of discovery in this action may be designated by such party or nonparty pursuant to Paragraphs 5 through 7 of this Protective Order.

5. The designation of information or material for purposes of this Protective Order shall be made in the following manner by the party or nonparty seeking protection:

a. in the case of documents, exhibits, briefs, memoranda, interrogatory responses, responses to requests for admission, or other materials (apart from depositions or

---

[1] This Protective Order does not apply to hearings before the Magistrate Judge or hearings or trial before the District Court. The parties, any party in interest, and/or the witnesses, can move the Court to seal any court proceeding for

2

Exhibit 4
Page 450

other pretrial or trial testimony): by affixing a plainly visible confidentiality designation legend to: (i) each page containing any confidential information or material; or (ii) physically on the outside of any media for storing electronic documents, at the time such documents are produced or such information is disclosed, or as soon thereafter as the party or nonparty seeking protection becomes aware of the confidential nature of the information or material disclosed and sought to be protected hereunder. The term "document," as used in this Order, shall have the broadest meaning permissible under the Federal Rules of Civil Procedure and shall include, without limitation, all "writings," "recordings" and "photographs" as defined in Rule 1001 of the Federal Rules of Evidence, and any information stored in or through any computer system or other electronic or optical data storage device.

        b.   In the case of depositions or other pretrial or trial testimony: (i) by a statement on the record, by counsel, during such deposition or other pretrial or trial proceeding that the entire transcript or a portion thereof shall be designated hereunder; or (ii) by written notice of such designation sent by counsel to all parties within ten (10) days after the mailing (via next business day delivery) to counsel by the court reporter of the transcript of the deposition. At or before a deposition, the deponent or his counsel, or any other counsel of record, acting in good faith, may invoke the provisions of this Protective Order in a timely manner, giving adequate warning to counsel for the party or nonparty that testimony about to be given is deemed protected under this Order. The parties shall treat all deposition and other pretrial and trial testimony as protected to the fullest extent under this Order until the expiration of ten (10) days after the mailing (via next business day delivery) to counsel of the transcript of the deposition. Unless designated as confidential pursuant to this Order, any confidentiality is waived after the expiration of the 10-day period unless otherwise stipulated or ordered. The

reasons consistent with this Protective Order.

3

Exhibit 4
Page 451

parties may modify this procedure for any particular deposition or proceeding through agreement on the record at such deposition or proceeding or otherwise by written stipulation, without approval of the Court. If any document or information designated under this Order is used during the course of a deposition, that portion of the deposition record reflecting such confidential information shall also be treated with the same confidential protection as that document or information.

        c.    A party or nonparty furnishing documents and things to another party shall have the option to require that all or batches of documents and things be treated as confidential during inspection and to make its designations of particular documents and things at the time copies of documents and things are produced or furnished.

    6. Information or Material designated as "Confidential" under this Order, or copies or extracts therefrom and compilations thereof, may be disclosed, described, characterized, or otherwise communicated or made available in whole or in part only to the following persons:

        a.    Outside counsel of record in this litigation and staff and supporting personnel of such attorneys, such as paralegals, secretaries, stenographic and clerical employees and contractors, and outside copying, imaging and presentation services, who are working on this litigation under the direction of such attorneys and to whom it is necessary that the materials be disclosed for purposes of this litigation;

        b.    In-house counsel for the parties herein who are necessary for the furtherance of this litigation and staff and supporting personnel of such attorneys;

        c.    Counsel employed in the litigation department of the Recording Industry Association of America ("RIAA") who are necessary for the furtherance of this litigation and staff and supporting personnel of such attorneys;

4

**Exhibit 4**
**Page 452**

d.   The parties to this litigation;

e.   Subject to Paragraphs 9 and 11 herein, persons who are expressly retained or sought to be retained by a party as consultants or testifying experts, such as accountants, statisticians, economists, industry or technical experts; provided that the disclosure of such material to any persons under this subparagraph shall only be to the extent necessary to perform their work in connection with this litigation.

f.   Subject to Paragraph 11 herein, any other persons who are designated to receive material designated "Confidential" by order of this Court after notice to the parties, or by written stipulation of the parties.

g.   Subject to Paragraphs 10 and 11 herein, any person of whom testimony is taken in this action.

h.   The Court and Court personnel.

i.   Subject to Paragraph 11, court reporters, interpreters and videographers employed in connection with this action.

7.   Information or Material designated as "Confidential-Attorneys' Eyes Only" under this Order, or copies or extracts therefrom and compilations thereof, may be disclosed, described, characterized, or otherwise communicated or made available in whole or in part only to the following persons:

a.   Outside counsel of record in this litigation and staff and supporting personnel of such attorneys, such as paralegals, secretaries, stenographic and clerical employees and contractors, and outside copying, imaging and presentation services, who are working on this litigation under the direction of such attorneys and to whom it is necessary that the materials be disclosed for purposes of this litigation;

5

Exhibit 4
Page 453

       b.    In-house counsel for the parties herein who are necessary for the furtherance of this litigation and staff and supporting personnel of such attorneys;

       c.    Counsel employed in the litigation department of the RIAA who are necessary for the furtherance of this litigation and staff and supporting personnel of such attorneys;

       d.    Subject to Paragraphs 9 and 11 herein, persons who are expressly retained or sought to be retained by a party as consultants or testifying experts, such as accountants, statisticians, economists, industry or technical experts; provided that the disclosure of "Confidential-Attorneys' Eyes Only" material to any persons under this subparagraph shall only be to the extent necessary to perform their work on this litigation.

       e.    Subject to Paragraph 11 herein, any other persons who are designated to receive material designated "Confidential-Attorneys' Eyes Only" by order of this Court after notice to the parties, or by written stipulation of the parties.

       f.    Subject to Paragraphs 10 and 11 herein, any person of whom testimony is taken in this action.

       g.    The Court and Court personnel.

       h.    Subject to Paragraph 11, court reporters, interpreters and videographers employed in connection with this action.

   8.    The parties retain the right to apply to the Court for an order restricting certain individuals from access to certain information. To accomplish this, counsel for a party wishing to restrict access to information shall produce the information (i.e. document) to all counsel for which there is no objection, with a request that the information not be disseminated to other individuals involved in this litigation pending further order of the Court. The moving party shall,

6

Exhibit 4
Page 454

thereafter, within 7 days, file the information under seal with the Magistrate Judge or the District Judge and identify the person (by name and title) who the moving party objects to seeing the information and why the moving party believes the information should not be received by this person(s). If the Court is inclined to grant the order, it will notify the aggrieved party and invite briefing before issuing an order.

9. For the purposes of this Order, a consultant shall be restricted to a person who is retained or employed as a bona fide consultant or expert for purposes of this litigation, whether full or part time, by or at the direction of counsel for a party. The name, business address, curriculum vitae ("CV") and affiliation of each such consultant or testifying expert must be disclosed to the producing party at least five (5) court days prior to such person's review of material designated under this Order. The CV shall contain a list of all present employers/clients as well as all past employers/clients for the 36 months preceding the date of employment in this case. During that five-day period, counsel for the designating party shall have the opportunity to oppose the proposed disclosure. Any party opposing disclosure shall within such five (5) day period provide the other party with a written objection, setting forth in reasonable detail the specific grounds for such opposition. If no written objection is received by 5:00 p.m., Eastern time, on the fifth day following the date of disclosure of the identity of the proposed consultant or testifying expert, then the party seeking to disclose may do so and failure to object shall constitute waiver of the specific objection. However, after the five-day period has expired without objection, a party may still move the Magistrate Judge or the District Judge to allow it to object to an expert if it can show:  a) there is new, material information relating to the expert, which was not available to the moving party within the five-day objection period; and b) had the moving party been aware of the information at the time, the moving party would have objected

7

Exhibit 4
Page 455

to the expert.  In the event that an objection is received, the objecting party shall, within two (2)

court days send to the other party by facsimile or next business day delivery its portion of a joint

discovery dispute letter.  Within three (3) court days of receipt of such portion of the joint letter,

the party seeking to disclose shall send its portion of the joint letter to the objecting party by

facsimile or next business day delivery. Within one (1) court day of receipt of both portions of

the joint letter, the objecting party shall submit the joint letter to the Court and a hearing shall be

scheduled at the Court's earliest convenience.  In the event such resolution by the Court is

necessary, the material at issue shall not be disclosed to the consultant or testifying expert

pending resolution of the issue by the Court.

    10. Each person set forth in Paragraphs 6 and 7 to be examined as a witness, may be so

examined at trial or during a deposition concerning any information or material designated under

this Order which that person had lawfully received or authored prior to and apart from this

action. During examination, any such witness may be shown information or material designated

under this Order by a party which appears on its face or from other documents or testimony to

have been received or authored by that witness from, or communicated to that witness by, that

same party provided that the examining party makes a reasonable effort to obtain the witness'

compliance with Paragraph 10.

    11. Each person set forth in Paragraphs 6 and 7 who is not (i) outside or inside counsel to

a party to this litigation or counsel in the litigation department of the RIAA; or (ii) the Court or

Court personnel to whom material designated under this Order is to be disclosed, shall, prior to

receiving such material, be furnished with a copy of this Protective Order, a copy of the Court's

Notification of Protective Order, which the witness shall read and sign (Attached as Exhibit A).

Counsel for the party seeking to disclose material designated under this Order to any such person

8

Exhibit 4
Page 456

pursuant to this paragraph shall be responsible for retaining the executed originals of all such Notifications. Copies of any such Notification shall be provided to counsel for the other parties or affected nonparties upon request.

12. All information and material designated under this Order shall be kept in secure facilities in a manner intended to preserve confidentiality. Access to those facilities shall be permitted only to those persons set forth in Paragraphs 6 and 7 above as persons properly having access thereto. The recipient of any material designated under this Order shall use its best efforts, but at no time less than reasonable efforts under the circumstances, to maintain the confidentiality of such information.

13. Nothing contained in this Order shall affect the right of any party to make any objection, claim any privilege, or otherwise contest any request for production of documents, interrogatory, request for admission, subpoena, or question at a deposition or to seek further relief or protective order from the Court as permitted by the Federal Rules of Civil Procedure. Nothing in this Order shall constitute an admission or waiver of any claim or defense by any party.

14. In the event that any material designated under this Order is used, described, characterized, excerpted or referenced in, or attached to, any court proceeding or submission in connection with this litigation: (i) it shall not lose its confidential status through such use; (ii) the parties shall take all steps reasonably required to protect its confidentiality during such proceedings; and (iii) the party shall file such material under seal, except that upon the default of the filing party to so designate, any party may do so. Envelopes used to seal such material shall carry the notation: "SUBJECT TO PROTECTIVE ORDER - FILED UNDER SEAL" and shall comply with all requirements of the Court for filing material under seal. Envelopes so marked

9

Exhibit 4
Page 457

shall be delivered sealed to the Clerk of the Court and the contents thereof shall not be made available for public inspection. Counsel for the designating party shall have the opportunity to oppose any request for public inspection.

15. Any documents and information produced by nonparties, pursuant to subpoena or otherwise, may be designated pursuant to the terms of this Order by any party or nonparty.

16. A party shall not be obligated to challenge the propriety of the confidentiality designation of any material under this Order at the time the designation is made, and failure to do so shall not preclude a subsequent challenge thereto. In the event that any party to this litigation disagrees at any state of these proceedings with a particular confidentiality designation, such party shall provide to the designating party or non-party a letter stating its objection to the designation and basis of that objection. The designating person or entity shall respond by letter within three (3) court days to such letter. If not resolved, the objecting party shall, within three (3) court days of the designating person or entity's letter response (or the lapse of the time period for such response) send to the designating person or entity by facsimile or next business day delivery its portion of a joint discovery dispute letter. Within three (3) court days of receipt of such portion of the joint letter, the designating person or entity shall send its portion of the joint letter to the objecting party by fax or next business day delivery. Within one (1) court day of receipt of both portions of the joint letter, the objecting party shall submit the joint letter to the Court and a hearing shall be scheduled at the Court's earliest convenience. The burden of proving that information has been properly designated under this Order is on the person or entity making such designation.

17. Nothing in this Order shall preclude any party to the lawsuit or its counsel: (a) from showing a document designated under this Order to an individual who either prepared or

Exhibit 4
Page 458

reviewed the document prior to the filing of this action; or (b) from disclosing or using, in any manner or for any purpose, any information or documents from the party's own files which the party itself has designated under this Order.

18. Nothing in this Order shall prevent disclosure beyond the terms of this Order if the party designating material consents in writing to such disclosure, or if a court orders such disclosure. A party requested to disclose material designated under this Order to a nonparty pursuant to a validly served subpoena, civil investigative demand, discovery procedure permitted under the Federal Rules of Civil Procedure, or other formal discovery request shall object to its production to the extent permitted by applicable law and notify the requesting nonparty of the existence of this Order and that the material requested by the nonparty has been designated under this Order, and shall further give notice of such request, by facsimile and next business day delivery, upon the party which designated the material as soon as is reasonably possible, but in all instances reasonably prior to the date on which such confidential material is to be produced to the nonparty.

19. If a party inadvertently fails to designate material and/or information, when producing or otherwise disclosing such material and/or information, it shall not be deemed a waiver in whole or in part of a party's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. As soon as the receiving party is informed by the producing party that it is designating previously produced material as "Confidential" or "Confidential--Attorneys' Eyes Only", the information must be treated as if it had been timely designated under this Protective Order, and the receiving party must endeavor in good faith to obtain all copies of the document

11

Exhibit 4
Page 459

which it distributed or disclosed to persons not authorized to access such information by Paragraphs 6 or 7 above, as well as any copies made by such persons.

20. All counsel for the parties who have access to information or material designated under this Order acknowledge they are bound by this Order and submit to the jurisdiction of this Court for purposes of enforcing this Order.

21. Entering into, agreeing to, and/or producing or receiving information or material designated under this Order, or otherwise complying with the terms of this Order shall not:

    a.    operate as an admission by any party that any particular information or material designated under this Order contains or reflects trade secrets, proprietary or commercially sensitive information, or any other type of confidential information;

    b.    operate as an admission by any party that the restrictions and procedures set forth herein constitute or do not constitute adequate protection for any particular information designated under this Order;

    c.    prejudice in any way the rights of any party to object to the production of documents they consider not subject to discovery;

    d.    prejudice in any way the rights of any party to object to the authenticity or admissibility into evidence of any document, testimony or other evidence subject to this Order;

    e.    prejudice in any way the rights of any party to seek a determination by the Court whether any information or material should be subject to the terms of this Order;

    f.    prejudice in any way the rights of any party to petition the Court for a further protective order relating to any purportedly confidential information; or

    g.    prevent the parties to this Order from agreeing in writing or on the record during a deposition or hearing in this action to alter or waive the provisions or protections

12

Exhibit 4
Page 460

provided for herein with respect to any particular information or material with written or on the record consent of the party disclosing such information.

22. This Order shall not be construed to apply to any information that: (a) is available to the public other than through a breach of this Order or other duty of confidentiality; (b) a receiving party can demonstrate was already known to the receiving party at the time of disclosure and was not subject to conditions of confidentiality; or (c) a receiving party can demonstrate was developed by that receiving party independently of any disclosure by a designating party or nonparty.

23. In the event that information in the possession or control of a person or entity involves the confidentiality rights of a non-party or its disclosure would violate a protective order issued in another action, the party with possession or control of the information will promptly attempt to obtain the consent of the non-party to disclose the information under this Order. If the consent of the non-party is refused or otherwise cannot be obtained, the party will promptly thereafter notify the party seeking discovery by the written response due date for such discovery of: (a) the existence and description (to the extent disclosable) of the information without producing such information; and (b) the identity of the non-party (provided, however, that such disclosure of the identity of the non-party does not violate any confidentiality obligations). The party seeking discovery may then make further application to the non-party or seek an order compelling discovery.

24. Within sixty (60) days after the final termination of litigation between the parties, all material designated under this Order and all copies thereof (including summaries and excerpts) shall be either returned to the party that produced it or destroyed and a certification of destruction supplied to the producing party; provided, however, that for each party, counsel who is entitled

13

Exhibit 4
Page 461

access to such designated material under Paragraphs 6 or 7 may retain one complete and
unredacted set of its work product that contains designated material as well as pleadings and
papers filed with the Court or served on the other party solely for reference in the event of, and
only in the event of, further proceedings or litigation between the parties to this action, a dispute
over such counsel's performance or a dispute over the use or dissemination of material
designated under this Order. Such retained copy of pleadings and papers shall be maintained in a
file accessible only by properly authorized counsel under the provisions of, and bound by, this
Order. This Order shall survive the final termination of this litigation with respect to any such
retained confidential material.

25. If information or documents subject to a claim of attorney-client privilege, attorney
work product or any other legal privilege protecting information from discovery is inadvertently
produced to a party or parties, such production shall in no way prejudice or otherwise constitute
a waiver of, or estoppel as to, any claim of privilege, work product or other ground for
withholding production to which the producing party or other person would otherwise be
entitled. In the event information or documents subject to a claim of attorney-client privilege,
attorney work product or any other legal privilege protecting information from discovery is
inadvertently produced, upon request of the producing party, the documents, together with all
copies thereof and any notes made therefrom shall promptly (and no later than ten days after
receipt of such request) be returned forthwith to the party claiming privilege and/or attorney
work product protection without the need to show the production was inadvertent. Nothing in

14

Exhibit 4
Page 462

this paragraph shall prejudice the right of any party to seek discovery of communications,

documents and things as to which a claim of privilege has been made.

Dated: March 5, 2007

Respectfully submitted,

Charles S. Baker (*pro hac vice*)
SDNY (CB-1365)
Eric D. Wade (*pro hac vice*)
SDNY (EW-7661)
Joseph D. Cohen (*pro hac vice*)
SDNY (JC-6628)
PORTER & HEDGES, LLP
1000 Main Street, 36th Floor
Houston, Texas  77002
(713) 226-6000 (Telephone)
(713) 228-1331 (Facsimile)
cbaker@porterhedges.com
ewade@porterhedges.com
jcohen@porterhedges.com

*Attorneys for Defendants/Counterclaim Plaintiffs*

CRAVATH, SWAINE & MOORE, LLP

By: _____
Katherine B. Forrest (KF-1979)

Worldwide Plaza
825 Eighth Avenue
New York, NY  10019-7475
(212) 474-1000
(212) 474-3700 (fax)

*Attorneys for Plaintiffs/Counterclaim Defendants*

IT IS SO ORDERED:

DATED: March 8, 2007

_____
Hon. Gerard E. Lynch

15

Exhibit 4
Page 463

**EXHIBIT 5**

From: Dan Kozusko
To: Teri Rowland
Cc: Tariq Mundiya
Cc: Mary Eaton
Cc: Paul Horan
Subject: RE: Arista Records LLC v. Lime Group LLC
Sent: Oct 30, 2010 1:56 PM

RE: Arista Records LLC v. Lime Group LLC Ms. Rowland:
We have not received a response to my letter of October 28.   Nor have we received any
production of documents from MediaDefender, even though that production, by your
colleague's own admission, has been ready to go for weeks.   We are also concerned by the
statement in your letter of October 27 that the only documents responsive to the subpoena
in MediaDefender's possession, custody, or control "are contracts between our company
MediaDefender, Inc. and its customers."  A simple internet search reveals the existence of
e-mails of MediaDefender, including ones concerning LimeWire, that are plainly responsive
to the subpoena.   To be clear, we expect MediaDefender to produce those documents as well,
together with any others that may responsive.  Lastly, please provide us with a deposition
date for MediaDefender, as required by the Subpoena.  We believe that MediaDefender's CEO
is the appropriate person, although we are certainly willing to consider a reasonable
alternative that you might propose.  Given that fact discovery is set to close on November
15, we will need to schedule that deposition to take place on or before that date. Please
let us know promptly whether Media Defender will be complying with its obligations under
the subpoena. Regards, Dan Kozusko Dan C. Kozusko Willkie Farr & Gallagher LLP 787 Seventh
Avenue New York, New York 10019 (212) 728-8694 (phone) (212) 728-9694 (fax)
dkozusko@willkie.com

**Exhibit 5**
**Page 464**

# EXHIBIT 6

| From: | Dimitri Villard [dvillard@peermediatech.com] |
|---|---|
| Sent: | Monday, November 01, 2010 9:54 AM |
| To: | Kozusko, Dan |
| Cc: | Teri Rowland |
| Subject: | Response |

Dear Mr. Kozusko:

I am the CEO of Peer Media Technologies, Inc., parent of and successor to MediaDefender, Inc. , and I am responding to your emails to Ms. Teri Rowland of our company.

(1)    MediaDefender obviously can't produce documents and emails that it no longer possesses.  That does not change regardless of what someone finds through a "simple internet search." We do not archive emails.

(2)    The grounds that you cite for relevance do not appear to apply to MediaDefender.  Your October 28th letter indicates that Judge Freeman already ruled that "licensing agreements between plaintiffs and third parties such as MediaDefender and any related communications are relevant" for determining the amount of statutory damages.  However, that ruling concerned production by Plaintiffs of their "actual and potential licensing arrangements" which "might shed light on the amount of profits that Plaintiffs would have made, had Defendants' customers downloaded Plaintffs' copyrighted works from a source authorized by Plaintiffs."  You and LimeWire apparently confuse MediaDefender with being such a "licensee."  It is not. Media Defender only provides anti-piracy services to clients.

(3)    Despite the Protective Order, we are concerned that the information contained in our confidential service agreements might nevertheless become known, as is often the case, and we will oppose any demand to produce them on the grounds of confidentiality as well as relevance as stated in (2), above. I suspect that the companies with whom we are or were contracted might well oppose such document production as well, and we have a duty to inform them of such demand so that they may take appropriate legal action if they wish.

Sincerely,

Dimitri Villard, CEO

Peer Media Technologies, Inc.

9046 Lindblade Street

1                **Exhibit 6
Page 465**

Culver City CA 90232

Tel 310.734.4551 direct * 310.956-3300 main

www.peermediatech.com

dvillard@peermediatech.com

**Exhibit 6**
**Page 466**

# EXHIBIT 7

**From:** Kozusko, Dan [<mailto:dkozusko@willkie.com>]
**Sent:** Wednesday, November 03, 2010 7:14 AM
**To:** dvillard@peermediatech.com
**Cc:** Teri Rowland
**Subject:** RE: Response

Mr. Villard,

1. We expect MediaDefender to produce emails in its possession, custody, or control that are responsive to the subpoena.

2. We do not understand your assertion that MediaDefender's contracts with one or more plaintiffs or the RIAA during the relevant time period are not responsive to the Subpoena. In particular, any such contracts for anti-piracy services that concern, or in any way relate to, one or more of the Songs listed in Exhibit 1 to the Subpoena are plainly responsive, as are any communications or other documents concerning those contracts. For example, if MediaDefender performed antipiracy services with regard to one or more of those Songs, the contacts you mention, together with any related communications and other documentation, would be responsive to the Subpoena. Those documents likewise are the proper subject of discovery here in that they are directly relevant to, *inter alia*, the conduct and attitude of the parties, including any efforts taken by plaintiffs or the RIAA to mitigate damages through antipiracy efforts.

3. The protective order entered by the Court is more than sufficient to protect the confidentiality of any documents produced by MediaDefender here, including service contracts. Indeed, plaintiffs -- the counter-parties to these contracts -- and numerous non-parties have already produced a significant amount of confidential and proprietary information pursuant to that order.

If MediaDefender chooses not to comply with its obligations under the subpoena, including the production of all responsive documents and appearing for deposition, we will have no alternative but to move to compel.

**Dan C. Kozusko**
**Willkie Farr & Gallagher LLP**
**787 Seventh Avenue**
**New York, New York 10019**
**(212) 728-8694 (phone)**
**(212) 728-9694 (fax)**
**dkozusko@willkie.com**

-----Original Message-----
**From:** Dimitri Villard [<mailto:dvillard@peermediatech.com>]
**Sent:** Monday, November 01, 2010 12:54 PM
**To:** Kozusko, Dan
**Cc:** Teri Rowland
**Subject:** Response

Dear Mr. Kozusko:

I am the CEO of Peer Media Technologies, Inc., parent of and successor to MediaDefender, Inc. , and I am responding to your emails to Ms. Teri Rowland of our company.

(1) MediaDefender obviously can't produce documents and emails that it no longer possesses. That does

1

**Exhibit 7**
**Page 467**

not change regardless of what someone finds through a "simple internet search." We do not archive emails.

(2) The grounds that you cite for relevance do not appear to apply to MediaDefender. Your October 28th letter indicates that Judge Freeman already ruled that "licensing agreements between plaintiffs and third parties such as MediaDefender and any related communications are relevant" for determining the amount of statutory damages. However, that ruling concerned production by Plaintiffs of their "actual and potential licensing arrangements" which "might shed light on the amount of profits that Plaintiffs would have made, had Defendants' customers downloaded Plaintffs' copyrighted works from a source authorized by Plaintiffs." You and LimeWire apparently confuse MediaDefender with being such a "licensee." It is not. Media Defender only provides anti-piracy services to clients.

(3) Despite the Protective Order, we are concerned that the information contained in our confidential service agreements might nevertheless become known, as is often the case, and we will oppose any demand to produce them on the grounds of confidentiality as well as relevance as stated in (2), above. I suspect that the companies with whom we are or were contracted might well oppose such document production as well, and we have a duty to inform them of such demand so that they may take appropriate legal action if they wish.

Sincerely,

Dimitri Villard, CEO

Peer Media Technologies, Inc.

9046 Lindblade Street

Culver City CA 90232

Tel 310.734.4551 direct * 310.956-3300 main

www.peermediatech.com

dvillard@peermediatech.com

**************************************************************************

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**************************************************************************

**Exhibit 7**
**Page 468**

# EXHIBIT 8

**From:** Dimitri Villard [mailto:dvillard@peermediatech.com]
**Sent:** Thursday, November 04, 2010 5:17 PM
**To:** Kozusko, Dan
**Cc:** Teri Rowland
**Subject:** RE: Response

Mr. Kozusko,

With all due respect it seems to me that having tried to justify your subpoena on grounds we don't believe are applicable to MediaDefender, you are now attempting to do so on other, new grounds. I would be interested to know what case law there is to indicate that the documents you seek are discoverable. For that matter, have you researched to see where courts have NOT required such production?

Sincerely,

Dimitri Villard, CEO

Peer Media Technologies, Inc.

9046 Lindblade Street

Culver City CA 90232

Tel 310.734.4551 direct * 310.956-3300 main

www.peermediatech.com

dvillard@peermediatech.com

**From:** Kozusko, Dan [<mailto:dkozusko@willkie.com>]
**Sent:** Wednesday, November 03, 2010 7:14 AM
**To:** dvillard@peermediatech.com
**Cc:** Teri Rowland
**Subject:** RE: Response

Mr. Villard,

1. We expect MediaDefender to produce emails in its possession, custody, or control that are responsive to the subpoena.

2. We do not understand your assertion that MediaDefender's contracts with one or more plaintiffs or the RIAA during the relevant time period are not responsive to the Subpoena. In particular, any such contracts for anti-piracy services that concern, or in any way relate to, one or more of the Songs listed in Exhibit 1 to the Subpoena are plainly responsive, as are any communications or other documents concerning those contracts. For example, if MediaDefender performed antipiracy services with regard to one or more of those Songs, the contacts you mention, together with any related communications and other documentation, would be responsive to the Subpoena. Those documents likewise are the proper subject of discovery here in that they are directly relevant to, *inter alia*, the conduct and attitude of the parties, including any efforts taken by plaintiffs or the RIAA to mitigate damages through antipiracy efforts.

3. The protective order entered by the Court is more than sufficient to protect the confidentiality of any

1

**Exhibit 8**
**Page 469**

documents produced by MediaDefender here, including service contracts. Indeed, plaintiffs -- the counter-parties to these contracts -- and numerous non-parties have already produced a significant amount of confidential and proprietary information pursuant to that order.

If MediaDefender chooses not to comply with its obligations under the subpoena, including the production of all responsive documents and appearing for deposition, we will have no alternative but to move to compel.

**Dan C. Kozusko**
**Willkie Farr & Gallagher LLP**
**787 Seventh Avenue**
**New York, New York 10019**
**(212) 728-8694 (phone)**
**(212) 728-9694 (fax)**
**dkozusko@willkie.com**

-----Original Message-----
**From:** Dimitri Villard [<mailto:dvillard@peermediatech.com>]
**Sent:** Monday, November 01, 2010 12:54 PM
**To:** Kozusko, Dan
**Cc:** Teri Rowland
**Subject:** Response

Dear Mr. Kozusko:

I am the CEO of Peer Media Technologies, Inc., parent of and successor to MediaDefender, Inc. , and I am responding to your emails to Ms. Teri Rowland of our company.

(1) MediaDefender obviously can't produce documents and emails that it no longer possesses. That does not change regardless of what someone finds through a "simple internet search." We do not archive emails.

(2) The grounds that you cite for relevance do not appear to apply to MediaDefender. Your October 28th letter indicates that Judge Freeman already ruled that "licensing agreements between plaintiffs and third parties such as MediaDefender and any related communications are relevant" for determining the amount of statutory damages. However, that ruling concerned production by Plaintiffs of their "actual and potential licensing arrangements" which "might shed light on the amount of profits that Plaintiffs would have made, had Defendants' customers downloaded Plaintffs' copyrighted works from a source authorized by Plaintiffs." You and LimeWire apparently confuse MediaDefender with being such a "licensee." It is not. Media Defender only provides anti-piracy services to clients.

(3) Despite the Protective Order, we are concerned that the information contained in our confidential service agreements might nevertheless become known, as is often the case, and we will oppose any demand to produce them on the grounds of confidentiality as well as relevance as stated in (2), above. I suspect that the companies with whom we are or were contracted might well oppose such document production as well, and we have a duty to inform them of such demand so that they may take appropriate legal action if they wish.

Sincerely,

Dimitri Villard, CEO

Peer Media Technologies, Inc.

9046 Lindblade Street

Culver City CA 90232

Tel 310.734.4551 direct * 310.956-3300 main

www.peermediatech.com

dvillard@peermediatech.com

*************************************************************************

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

*************************************************************************

3

**Exhibit 8**
**Page 471**

**EXHIBIT 9**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/4/10
```

-------------------------------------------------------------------x
ARISTA RECORDS LLC; ATLANTIC RECORDING
CORPORATION; ARISTA MUSIC, fka BMG
MUSIC; CAPITOL RECORDS, INC; ELEKTRA
ENTERTAINMENT GROUP INC; INTERSCOPE
RECORDS; LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY RECORDS
LLC; SONY MUSIC ENTERTAINMENT, fka SONY     06 CV 5936 (KMW)
BMG MUSIC ENTERTAINMENT; UMG RECORDINGS,
INC; VIRGIN RECORDS AMERICA, INC.; and
WARNER BROS. RECORDS INC.,                   ORDER

                  Plaintiffs,

    -against-

LIME GROUP LLC; LIME WIRE LLC; MARK
GORTON; GREG BILDSON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP,

                  Defendants.
-------------------------------------------------------------------x
KIMBA M. WOOD, U.S.D.J.:

    The Court has received Plaintiffs' letter, dated November 3, 2010, seeking urgent review
of an Order of Magistrate Judge Freeman, dated November 2, 2010.

    The Court orders the Defendant to respond to that letter by Friday, November 5, at 12:00
p.m. Any date for oral argument will be set by the Court upon receipt and review of the parties'
submission.

    Each date contained in parties' joint pretrial schedule, adopted by the Court on September
13, 2010, is hereby extended by ten days.

SO ORDERED.

Dated: New York, New York
      November **3** , 2010

                            Kimba M. Wood
                            United States District Judge

**Exhibit 9**
**Page 472**

**EXHIBIT 10**

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/19/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ARISTA RECORDS LLC; ATLANTIC RECORDING
CORPORATION; ARISTA MUSIC, fka BMG
MUSIC; CAPITOL RECORDS, INC; ELEKTRA
ENTERTAINMENT GROUP INC; INTERSCOPE
RECORDS; LAFACE RECORDS LLC; MOTOWN
RECORD COMPANY, L.P.; PRIORITY RECORDS
LLC; SONY MUSIC ENTERTAINMENT, fka SONY
BMG MUSIC ENTERTAINMENT; UMG RECORDINGS,
INC; VIRGIN RECORDS AMERICA, INC.; and
WARNER BROS. RECORDS INC.,                                    06 CV 5936 (KMW)

                                                             OPINION AND ORDER

                         Plaintiffs,

              -against-

LIME GROUP LLC; LIME WIRE LLC; MARK
GORTON; GREG BILDSON; and M.J.G. LIME WIRE
FAMILY LIMITED PARTNERSHIP,

                         Defendants.
-------------------------------------------------------------------x
KIMBA M. WOOD, U.S.D.J.:

I.    Introduction

       On May 11, 2010, this Court granted summary judgment in favor of Plaintiffs on their

claims against Defendants Lime Wire LLC ("LW"), Lime Group LLC ("Lime Group"), and

Mark Gorton (collectively, "Defendants") for secondary copyright infringement. The Court

found that Defendants induced users of the LimeWire file-sharing program ("LimeWire") to

infringe Plaintiffs' copyrights. In the Court's Opinion and Order (as amended on May 25, 2010),

the Court detailed this case's procedural and factual background (Dkt. No. 223), familiarity with

which is assumed.

       The litigation is now in the damages phase. The instant dispute concerns the scope of

damage-related discovery to which Defendants are entitled. Plaintiffs have filed an objection to

**Exhibit 10**
**Page 473**

Case 2:10-cv-09438-GW-PJW    Document 3    Filed 12/09/10    Page 47 of 83    Page ID
#:1789
Case 1:06-cv-05936-KMW -DCF    Document 363    Filed 11/19/10    Page 2 of 11

Magistrate Judge Freeman's Order of November 2, 2010 (Dkt. No. 339) (hereinafter, the "November 2 Order"). Magistrate Judge Freeman issued the November 2 Order issued after a lengthy hearing held on November 1, 2010. The November 2 Order granted, in part, Plaintiffs' Motion for Reconsideration of Magistrate Judge Freeman's Order of October 15, 2010 (Dkt. No. 329) (hereinafter, the "October 15 Order"). The October 15 Order ordered Plaintiffs to supplement its prior productions of certain categories of material, and ordered production of further materials related to damages.

Specifically, Plaintiffs object to the following provisions of the November 2 Order:

1. That Plaintiffs produce all communications, relating to licensing, between Defendants and the 15 third-party licensees recently subpoenaed by Defendants, except for draft license agreements, from the last point in time discovery was collected;

2. That Plaintiffs produce all communications with other licensees referring or relating to LimeWire;

3. That the parties meet and confer regarding the parameters of an appropriate search for Plaintiffs' communications with their potential (as opposed to actual) licensees;

4. That Plaintiffs search for and produce internal emails regarding LimeWire contained in the email accounts of those employees of Plaintiffs who have been primarily responsible for negotiating licensing agreements with the 15 third-party licensees recently subpoenaed by Defendants;

5. With respect to recordings that were issued after 1972, as to which Plaintiffs are seeking statutory damages, that the parties submit supplemental briefing setting forth legal authority for their respective positions as to whether information regarding Plaintiffs' profits (as opposed to gross revenue) is relevant to statutory copyright damages;

6. With respect to recordings that were issued before 1972, as to which Plaintiffs are seeking common-law actual damages, that Plaintiffs produce documents and/or information sufficient to show the royalties paid by Plaintiffs in connection with those recordings;

7. To the extent Plaintiffs have gathered information regarding specific instances of the recordings at issue in this case being downloaded via the LimeWire system,

Exhibit 10
Page 474

Case 2:10-cv-09438-GW-PJW   Document 3   Filed 12/09/10   Page 48 of 83   Page ID
#:1790
Case 1:06-cv-05936-KMW -DCF   Document 363   Filed 11/19/10   Page 3 of 11

that Plaintiffs provide Defendants with documents or information sufficient to show the earliest dates that each such recording was downloaded.

These disputed discovery orders (collectively "Orders 1-7") can be roughly broken into three categories. Orders 1-4 pertain to <u>discovery regarding Plaintiffs' communication with licensees and potential licensees</u>. Orders 5 and 6 pertain to <u>discovery regarding Plaintiffs' profits and costs related to the infringed works</u>. Order 7 pertains to the <u>date of that each work was first infringed</u>. The Court will address each category in turn.

For the reasons stated below, Judge Freeman's November 2 Order is AFFIRMED as to Orders 1, 5 and 6, and this Court holds in abeyance its review of Orders 2-4 and 7.

II.   <u>Standard of Review</u>

Pursuant to Rule 72 of the Federal Rules of Civil Procedure and its enabling statute, the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), for non-dispositive matters, including discovery disputes, a district court shall reverse a magistrate's order only where it has been shown that the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A) (2002); *see also* Fed. R. Civ. P. 72(a); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). Courts in this Circuit have held that a magistrate's ruling on a discovery dispute should only be overturned for an abuse of discretion. *Edmonds v. Seavey*, No.08 Civ. 5646, 2009 WL 2150971, *2 (S.D.N.Y. July 20, 2009) (noting that the fact that "reasonable minds may differ on the wisdom of granting [a party's] motion is not sufficient to overturn a magistrate judge's decision").

III.   <u>Plaintiff's Objections</u>

   A.   <u>Orders 1-4: Licensee Communications</u>

**Exhibit 10**
**Page 475**

Case 2:10-cv-09438-GW-PJW   Document 3   Filed 12/09/10   Page 49 of 83   Page ID
#:1791
Case 1:06-cv-05936-KMW -DCF   Document 863   Filed 11/19/10   Page 4 of 11

Plaintiffs argue that Judge Freeman committed clear error in ordering supplemental discovery as to Plaintiffs' communications and negotiation with licensees of its recordings, as well as internal communications regarding such license agreements.

In the October 15 Order, Judge Freeman explains that these communications would be relevant to the calculation of Plaintiffs' statutory damages under the six-factor test outlined most recently in *Bryant v. Media Rights Prods., Inc.*, 603 F.2d 135, 144 (2d Cir. 2010). There, the Second Circuit explained that, in calculating appropriate statutory damages for copyright infringement, courts should consider

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Id.* (citing *N.A.S. Impor. Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252-53 (2d Cir.1992)).

Judge Freeman reasoned that communication between Plaintiffs and actual or potential licensees, particularly communication that directly discussed LimeWire, could potentially shed light on "(3) revenue lost by the copyright holder" and "(6) the conduct and attitude of the parties." *Bryant*, 603 F.2d at 144. In particular, communications regarding licensing could illuminate Plaintiffs' "conduct and attitude" about its copyrights, licensing, and internet companies generally. Further, given that Plaintiffs had previously provided discovery of this type at an earlier stage in the litigation, Plaintiffs were required under Fed. R. Civ. P. 26(e) to supplement and update their production. October 15 Order at 5-6.

Plaintiffs argue that producing this material will be highly burdensome, and that this material is, in any event, not relevant to any viable claim or defense at this stage of the litigation. Although Plaintiffs previously did provide discovery of this type earlier in the litigation,

4

**Exhibit 10**
**Page 476**

Case 2:10-cv-09438-GW-PJW    Document 3    Filed 12/09/10    Page 50 of 83    Page ID
#:792
Case 1:06-cv-05936-KMW -DCF    Document 363    Filed 11/19/10    Page 5 of 11

Plaintiffs contend that those productions were in response to requests pertaining solely to

Defendants' antitrust counterclaims, and copyright misuse defenses, all of which have now been

dismissed. Plaintiffs' Letter of November 2, 2010 (hereinafter "Pl. Letter") at 8-9. Therefore,

Plaintiffs argue, they are no longer under any duty to supplement those productions. Further,

Plaintiffs argue that, to the extent that *Bryant* instructs courts to look at the "conduct and

attitude" of the Plaintiffs at all, only Plaintiffs' conduct in the litigation itself, or conduct *vis à vis*

the Defendants themselves, is relevant. Pl. Letter at 8. Plaintiff contends that there is no

authority for the position that this inquiry looks to a plaintiff's communication with third party,

legitimate distributors of its works. *Id.*

   Defendants argue that this communication would illuminate plaintiffs' attitudes regarding

the value of its copyrights and would show how Plaintiffs conducted themselves in dealing with

others in the Internet marketplace. In particular, Defendants point to an email from Plaintiffs'

prior productions that, Defendants argue, shows that Plaintiffs "sought to exert pressure on

LimeWire to make a commercial deal on Plaintiffs' terms." Defendants' Letter of November 5,

2010 (hereinafter "Def. Letter") at 5. Defendants also argue that decisions in this Circuit do look

to the attitude and conduct of the plaintiff in setting statutory damage awards. *Id.* (citing *Warner

Brothers, Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989); *Entral Group Int'l,

LLC v. YHLC vision Corp.*, No. 05 Civ. 1912, 2007 WL 4373257, at *3 (E.D.N.Y. Dec. 10,

2007); *Arclight & Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 363 (S.D.N.Y.

2003)). Moreover, Defendants point out, no decision has held that a Plaintiff's conduct towards

third parties cannot be relevant to its "conduct and attitude" under *Bryant*. Finally, Defendants

argue that the earlier discovery requests of this type of material were not exclusively related to

the antitrust and copyright misuse arguments, and therefore Rule 26(e) obligates Plaintiffs to

**Exhibit 10**
**Page 477**

Case 2:10-cv-09438-GW-PJW    Document 3    Filed 12/09/10    Page 51 of 83    Page ID
#:1793
Case 1:06-cv-05936-KMW -DCF   Document 363   Filed 11/19/10   Page 6 of 11

supplement their production. *See also* October 15 Order at 3-4 ("The parties did not brief, and

the Court did not address, the relevance of any of Defendants' specific document requests to

other issues, including damages.").

In response to Plaintiffs' Motion for Reconsideration, Judge Freeman modified her

original ruling to limit the required production. *See* November 2 Order. Specifically, the

November 2 Order limited the production of Plaintiffs' "communications related to licensing" to

Plaintiffs' communications with only 15 third-party licensees, previously identified by

Defendants as being of particular interest to their damages analysis. Judge Freeman further

limited this production to exclude draft license agreements, based on Defendants' concession

that they were not pressing for such production. As to any other of Plaintiffs' licensees, Judge

Freeman limited the required production to the license agreements themselves, and to

communications referring specifically to LimeWire.

The Court is mindful of the potentially burdensome nature of this discovery, but

acknowledges Defendants' right to seek discovery relevant to a potential defense. Case law

interpreting the *Bryant* factors is limited, but no decision holds that a plaintiff's communications

with third parties can <u>never</u> be relevant to its "conduct and attitude" in setting statutory damages.

Moreover, while Plaintiffs' prior productions of this material may have been particularly relevant

to Defendants' antitrust claims and copyright misuses, Plaintiffs have not established that that

discovery was *exclusively* sought for those now-dismissed arguments. Accordingly, the Court

cannot rule that Judge Freeman committed clear error in ordering Plaintiffs to supplement their

prior productions of material falling under this category.

Given the potentially burdensome nature and broad scope of the discovery, as well as the

potentially tenuous connection of the evidence sought to the damages inquiry at issue, this Court

**Exhibit 10**
**Page 478**

AFFIRMS Order 1. Defendants will be permitted to seek discovery regarding communications relating to licensing between Plaintiffs and the 15 third-party licensees recently subpoenaed by Defendants. With respect to Orders 2-4, this Court holds in abeyance its decision, to give Defendants the opportunity to make a presentation of evidence to Judge Freeman to demonstrate that the discovery pursuant to Order 1 has yielded relevant evidence, and that further discovery pursuant to Orders 2-4 is necessary. The Parties shall meet and confer in good faith regarding when production of evidence pursuant to Order 1 may be made, and when the Parties will be prepared to appear before Judge Freeman to address the need for discovery pursuant to Orders 2-4.

     B.    <u>Orders 5 and 6: Profits Information</u>

     Plaintiffs argue that Judge Freeman committed clear error in ordering discovery as to the royalties it paid on recordings issued before 1972, and in ordering further briefing from the parties on the relevance of Plaintiffs' profits to the calculation of statutory damages for infringement of recordings issued after 1972.

     While it is hornbook copyright law that statutory copyright damages need not be based on evidence of actual damages, 4-14 Nimmer on Copyright § 14.04[A] (2010), it is well-settled that the amount of actual damages is one factor that courts take into account when setting statutory damages. *Bryant*, 603 F.2d at 144; *see also* Order of Aug. 9, 2010 (Dkt. No. 302) at 5 n.2 (noting that "Defendants are entitled to some discovery relating to the actual damages suffered by Plaintiffs as a result of Defendants' infringing conduct . . . [because] the Court may consider actual damages in determining the appropriate statutory damage award" (citing *Wartner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989)). In any event, Judge Freeman certainly did not commit clear error in asking the parties for additional briefing on a

**Exhibit 10**
**Page 479**

Case 2:10-cv-09438-GW-PJW    Document 3    Filed 12/09/10    Page 53 of 83    Page ID
Case 1:06-cv-05936-KMW -DCF  Document 563   Filed 11/19/10  Page 8 of 11
#:795

disputed legal question.  Order 5, ordering the parties to provide supplemental briefing on the

relevance of Plaintiffs' profits to the calculation of statutory damages, is thus AFFIRMED.

The Parties shall provide this briefing in accordance with the new schedule set forth *infra*

Section IV.

As to pre-1972 works, for which Plaintiffs are seeking actual damages, the Court finds

that it was not clearly erroneous for Judge Freeman to issue Order 6, ordering production of

royalty information.  Both revenue and expense information related to online music sales are

relevant to the actual damages Plaintiffs purportedly suffered as a result of Defendants'

infringement, and it was not clear error to order production of material sufficient to show this

information.  Moreover, the order is not overly burdensome given that it does not order

production of all royalty-related information for these works, but rather, orders production of

information or material "sufficient to show the royalties paid by Plaintiffs in connection with

those recordings." November 2 Order at 3.

C.    Order 7:  Earliest Date of Infringement

Plaintiffs argue that Judge Freeman committed clear error in ordering production of any

information or documents possessed by Plaintiffs that are sufficient to show the earliest date that

each of the recordings was first downloaded through the LimeWire service.

Defendants have sought this information on the theory that if any recording was infringed

prior to the registration of that work's copyright, Plaintiffs then would be barred from recovering

statutory damages for that work.  *See* 15 U.S.C. § 412(2) (barring statutory damages for "any

infringement of copyright commenced after first publication of the work and before the effective

date of its registration, unless such registration is made within three months after the first

publication of the work").  Plaintiffs argue that, even if the first date a recording was downloaded

8

**Exhibit 10**
**Page 480**

Case 2:10-cv-09438-GW-PJW    Document 3    Filed 12/09/10    Page 54 of 83    Page ID
Case 1:06-cv-05936-KMW -DCF    Document 663    Filed 11/19/10    Page 9 of 11
#:790

through the LimeWire service was prior to the work's registration, later downloads taking place after the work's registration would be subject to statutory damages.  Pl. Letter at 13.  Defendants respond that, as a matter of law, later downloads are merely "part of an ongoing series of infringing acts."  Def. Letter at 11 (quoting *U2 Home Entm't , Inc. v. Hong Wei Int'l Trading, Inc.*, No. 04 Civ. 6189, 2008 WL 3906889, at *15 (S.D.N.Y. Aug. 21, 2008)).  Defendants cite case law holding that, where the first infringement in an "ongoing series" occurred prior to registration, then a plaintiff cannot seek statutory damages for later post-registration infringements of the work that are part of the same "ongoing series."  *Id.* (citing *U2 Home Entm't*, 2008 WL 3906889, at *15; *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 726 (S.D.N.Y. 1996)).  This question has not been firmly resolved by the courts in the context of the secondary liability of a peer-to-peer file-sharing service for downloads by different users. Plaintiffs argue that Defendants are not entitled to discovery on this issue until they resolve this issue as a matter of law.

The Court holds in abeyance its decision on this Order, to permit Judge Freeman to decide the threshold legal question of whether subsequent downloads by a peer-to-peer service users qualify as new infringements, or rather are part of an ongoing series of infringements. Both parties shall submit briefing to Judge Freeman on this legal issue in accordance with the schedule set forth *infra*, unless Judge Freeman modifies that schedule.   Depending on the resolution of that legal issue, the Court may order discovery related to this issue.

9

**Exhibit 10**
**Page 481**

Case 2:10-cv-09438-GW-PJW    Document 3    Filed 12/09/10    Page 55 of 83    Page ID
Case 1:06-cv-05936-KMW -DCF    Document 363    Filed 11/19/10    Page 10 of 11
#:793

IV.    <u>New Schedule</u>

Judge Freeman's November 2 Order, and this Order, as well as the recent filing of a

potentially dispositive motion by Defendants (Dkt. No. 330), necessitates a shift in the trial

schedule.  The new schedule is as follows:

| | |
|---|---|
| Simultaneous Briefing on Legal Issues Outlined in this Order, at Sections III.B and III.C *supra* | Mon. Nov. 29, 2010 |
| Responses to that Briefing | Mon. Dec. 6, 2010 |
| Completion of Document Production | Wed. Dec. 29, 2010 |
| Last Day to file Dispositive Motions | Fri. Jan. 7, 2010 |
| Defendants' Expert Reports Due | Fri. Jan. 14, 2011 |
| Last day for fact depositions | Mon. Jan 30, 2011 |
| Last day for expert depositions | Mon. Feb. 14, 2011 |
| Exchange trial exhibits, witness lists, deposition designations | Mon. Feb. 28, 2011 |
| Motions in Limine and objections to trial exhibits, witness lists, deposition designations | Fri. March 11, 2011 |
| Replies to objections to trial exhibits, witness lists, deposition designations | Fri. March 28, 2011 |
| Pretrial Order | Fri. March 25, 2011 |
| Oppositions to Motions in Limine | Wed. March 30, 2011 |
| Replies to Motions in Limine | Fri. April 8, 2011 |
| Trial | Mon. April 25, 2011 |

**Exhibit 10**
**Page 482**

Case 2:10-cv-09438-GW-PJW    Document 3    Filed 12/09/10    Page 56 of 83    Page ID
Case 1:06-cv-05936-KMW -DCF    Document 363    Filed 11/19/10    Page 11 of 11
#:709

V.    <u>Conclusion</u>

The November 2 Order is AFFIRMED, with the exception that the Court holds in

abeyance ruling on Orders 2-4 and 7, as set forth above.

Discovery and briefing shall proceed, as consistent with this Order, at the direction of

Judge Freeman.

SO ORDERED.

Dated: New York, New York
        November 18, 2010

Kimba M. Wood
United States District Judge

11

**Exhibit 10**
**Page 483**

# EXHIBIT 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
ARISTA RECORDS LLS, et al.,                                 :
                                                            :
                                    Plaintiffs,             :          06 Civ. 5936 (KMW)(DF)
                                                            :
                  -against-                                 :          **ORDER**
                                                            :
LIME GROUP LLC, et al.,                                     :
                                                            :
                                    Defendants.             :
------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

        Before the Court is Defendants' application for an order compelling non-party

VEVO, LLC ("VEVO") to produce documents in response to a subpoena served on VEVO by

Defendants.  Having reviewed Defendants' and VEVO's submissions to the Court, the Court

finds that VEVO's proposal to produce certain documents, as set forth in its correspondence with

Defendants, strikes an appropriate balance between Defendants' need to obtain relevant

documents and the burden to VEVO.  Accordingly, it is hereby ORDERED that VEVO produce:

        1.      All signed contracts, licenses, or other agreements between VEVO and any

plaintiff in this case, concerning the use, publication, display, or broadcast of any material to

which any plaintiff owns, holds, claims, or otherwise maintains a copyright, including

supplements, modifications, and amendments, but not including drafts, except to the extent that

drafts are attached to the communications separately ordered to be produced, as set forth in

paragraph 3(b) below.

        2.      All monthly summary reports and monthly detailed "XML" reports submitted by

VEVO to any plaintiff, showing amounts paid by VEVO pursuant to any such signed contract,

license or agreement between VEVO and any plaintiff in this case.

**Exhibit 11**
**Page 484**

Case 2:10-cv-09438-GW-PJW   Document 3   Filed 12/09/10   Page 59 of 83   Page ID
#:1801
Case 1:06-cv-05936-KMW -DCF   Document 367   Filed 11/23/10   Page 2 of 2

3.      All documents contained in the files of (1) Rio Caraeff, (2) Fred Santarpia,

(3) Alan Price, (4) Julie Lee, and (5) Alexander Kisch (collectively, the "Custodians"):

      a.      referring to "LimeWire"; or

      b.      consisting of communications with the following individuals:  David

Weinberg, Jaunique Sealy, Michael Mulein, Wendy Nussbaum, Zach Horowitz, Charles

Ciongoli, David Ring, Mark Eisenberg, Michael Paul, Jeff Walker, Chris Bonavia,

Jonathan Glass, Bobby Sherman, Dennis Kooker, Thomas Hesse, Amy Lauren, Mark

Pilbe, Elio Leoni-Sceti, Chris Kennedy, and Enrico Del Prete, and containing any of the

following terms: licens*, royalt*, agreement, contract, "label fees," and "revenue share."

Dated:  New York, New York
        November 23, 2010

                        SO ORDERED

                        _____
                        DEBRA FREEMAN
                        United States Magistrate Judge

Copies to:

all parties (via ECF)

Cynthia Richman, Esq.
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20063-5304

**Exhibit 11**
**Page 485**

**EXHIBIT 12**

| From: | Kozusko, Dan [dkozusko@willkie.com] |
|---|---|
| Sent: | Friday, December 03, 2010 12:38 PM |
| To: | Dimitri Villard |
| Cc: | Teri Rowland; Mundiya, Tariq |
| Subject: | RE: Response |

Mr. Villard:

In light of your continued refusal to produce documents to us, which are clearly relevant to the six factors that the Court must take into account in determining the amount of statutory damages that plaintiffs may recover for copyright infringement, Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010), we are filing a motion to compel.  The documents in your clients' possession also go to the issue of when the plaintiffs' copyrighted works were first infringed.  Your confidentiality concerns are without merit, given the entry of a protective order.  Any privilege assertions are also without merit in light of the nature of the documents sought.

MediaDefender's conduct is especially egregious because your colleague, Mike Allen, represented to us -- not once, but twice -- that a full set of documents responsive to the subpoena had been collected and were ready to be sent out to us immediately via FedEx.  At no time during those discussions did Mr. Allen or anyone else at MediaDefender ever interpose any objection to the Subpoena.  Rather, it was not until more than a month after we served the Subpoena, well past the deadline for MediaDefender to object, that MediaDefender changed course abruptly and resisted production of even a single document on the basis of relevance and confidentiality.  As shown above and in my prior communications, both of those objections, besides being untimely under Rule 45, are without merit, in any event.

The Magistrate Judge overseeing the action has recently ordered production of documents from another third party.  Accordingly, there is no basis for MediaDefender's contention that concededly responsive documents in its possession, custody, or control are not relevant to the issues to be tried before Judge Wood.

Equally meritless is your unsubstantiated assertion that the protective order entered by the Court is somehow insufficient to satisfy MediaDefender's confidentiality concerns with respect to documents responsive to the Subpoena, especially given that plaintiffs, the counterparties to those contracts, have already produced confidential and proprietary information pursuant to the terms of the protective order, which permits producing parties to designate appropriate documents as "confidential" or "attorneys' eyes only" (Protective Order ¶ 1).  See, e.g., In re McKesson Corp., 264 F.R.D. 595, 602-03 (N.D. Cal. 2009) (overruling confidentiality objections and granting motion to compel non-party to comply with subpoena because "the protective order … currently in place" permits the producing party "to designate documents either 'confidential' or … 'attorneys' eyes only'" and that "protection is sufficient"); Gomez v. J.R. Hycee Conveyor Co., Inc., No. CV 06-2827, 2008 U.S. Dist. LEXIS 570, at *3 (E.D.N.Y. Jan. 3, 2008) (denying UPS's motion to quash non-party subpoena because "[defendant] Hycee's proposal to enter into a protective order limiting the use of the documents produced to this litigation and requiring their return at the conclusion of this litigation, adequately addresses UPS's interest in keeping its proprietary information confidential").

As for your query on whether we have located case law "where courts have NOT required such

1

**Exhibit 12**
**Page 486**

production," I can confirm to you that we complied in full with our obligations under Rule 11 prior to serving the Subpoena. To the extent that you believe case law may exist to support the position that MediaDefender has taken in response to the Subpoena, it is the obligation of MediaDefender and its counsel to perform that research and, if necessary, bring any pertinent authorities to the Court's attention in connection with a motion to compel.

Lastly, any suggestion that Defendants have somehow changed positions improperly here is meritless; to the contrary, Defendants have requested consistently that MediaDefender produce documents responsive to the Subpoena. Moreover, this suggestion rings especially hollow in light of MediaDefender's own conduct here.

Accordingly, we reiterate our request that MediaDefender comply promptly with its obligations under the Subpoena by producing all responsive documents in its possession, custody, or control and, once that production is complete, having a representative appear for deposition. We are, of course, willing to work with you to schedule a mutually convenient time during the discovery period (recently extended to the end of January 2011) for that deposition to take place. In the event that MediaDefender chooses not to comply with its obligations under the Subpoena, we will move to compel.

Regards,

Dan Kozusko

Dan C. Kozusko
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8694 (phone)
(212) 728-9694 (fax)
dkozusko@willkie.com

     -----Original Message-----
     From: Dimitri Villard [mailto:dvillard@peermediatech.com]
     Sent: Thursday, November 04, 2010 5:17 PM
     To: Kozusko, Dan
     Cc: Teri Rowland
     Subject: RE: Response

     Mr. Kozusko,

        With all due respect it seems to me that having tried to justify your subpoena on grounds we don't believe are applicable to MediaDefender, you are now attempting to do so on other, new grounds. I would be interested to know what case law there is to indicate that the documents you seek are discoverable. For that matter, have you researched to see where courts have NOT required

**Exhibit 12**
**Page 487**

such production?

Sincerely,

Dimitri Villard, CEO

Peer Media Technologies, Inc.

9046 Lindblade Street

Culver City CA 90232

Tel 310.734.4551 direct * 310.956-3300 main

www.peermediatech.com

dvillard@peermediatech.com

From: Kozusko, Dan [mailto:dkozusko@willkie.com]
Sent: Wednesday, November 03, 2010 7:14 AM
To: dvillard@peermediatech.com
Cc: Teri Rowland
Subject: RE: Response

Mr. Villard,

1. We expect MediaDefender to produce emails in its possession, custody, or control that are
responsive to the subpoena.

3

**Exhibit 12**
**Page 488**

2.  We do not understand your assertion that MediaDefender's contracts with one or more plaintiffs or the RIAA during the relevant time period are not responsive to the Subpoena.  In particular, any such contracts for anti-piracy services that concern, or in any way relate to, one or more of the Songs listed in Exhibit 1 to the Subpoena are plainly responsive, as are any communications or other documents concerning those contracts.  For example, if MediaDefender performed antipiracy services with regard to one or more of those Songs, the contacts you mention, together with any related communications and other documentation, would be responsive to the Subpoena.  Those documents likewise are the proper subject of discovery here in that they are directly relevant to, inter alia, the conduct and attitude of the parties, including any efforts taken by plaintiffs or the RIAA to mitigate damages through antipiracy efforts.

3.  The protective order entered by the Court is more than sufficient to protect the confidentiality of any documents produced by MediaDefender here, including service contracts.  Indeed, plaintiffs -- the counter-parties to these contracts -- and numerous non-parties have already produced a significant amount of confidential and proprietary information pursuant to that order.

If MediaDefender chooses not to comply with its obligations under the subpoena, including the production of all responsive documents and appearing for deposition, we will have no alternative but to move to compel.

Dan C. Kozusko
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8694 (phone)
(212) 728-9694 (fax)
dkozusko@willkie.com

-----Original Message-----
From: Dimitri Villard [mailto:dvillard@peermediatech.com]
Sent: Monday, November 01, 2010 12:54 PM
To: Kozusko, Dan
Cc: Teri Rowland
Subject: Response

Dear Mr. Kozusko:

**Exhibit 12
Page 489**

I am the CEO of Peer Media Technologies, Inc., parent of and successor to MediaDefender, Inc. , and I am responding to your emails to Ms. Teri Rowland of our company.

     (1)   MediaDefender obviously can't produce documents and emails that it no longer possesses. That does not change regardless of what someone finds through a "simple internet search." We do not archive emails.

     (2)   The grounds that you cite for relevance do not appear to apply to MediaDefender. Your October 28th letter indicates that Judge Freeman already ruled that "licensing agreements between plaintiffs and third parties such as MediaDefender and any related communications are relevant" for determining the amount of statutory damages. However, that ruling concerned production by Plaintiffs of their "actual and potential licensing arrangements" which "might shed light on the amount of profits that Plaintiffs would have made, had Defendants' customers downloaded Plaintffs' copyrighted works from a source authorized by Plaintiffs." You and LimeWire apparently confuse MediaDefender with being such a "licensee." It is not. Media Defender only provides anti-piracy services to clients.

     (3)   Despite the Protective Order, we are concerned that the information contained in our confidential service agreements might nevertheless become known, as is often the case, and we will oppose any demand to produce them on the grounds of confidentiality as well as relevance as stated in (2), above. I suspect that the companies with whom we are or were contracted might well oppose such document production as well, and we have a duty to inform them of such demand so that they may take appropriate legal action if they wish.

Sincerely,

Dimitri Villard, CEO

Peer Media Technologies, Inc.

9046 Lindblade Street

Culver City CA 90232

Tel 310.734.4551 direct * 310.956-3300 main

www.peermediatech.com

dvillard@peermediatech.com

**Exhibit 12**
**Page 490**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Exhibit 12**
**Page 491**

# EXHIBIT 13

| From: | Kozusko, Dan [dkozusko@willkie.com] |
|---|---|
| Sent: | Tuesday, December 07, 2010 1:31 PM |
| To: | Dimitri Villard |
| Cc: | Teri Rowland; Mundiya, Tariq |
| Subject: | RE: Response |

Mr. Villard,

I write regarding our motion to compel.  Given that the close of fact discovery is fast approaching, there is not enough time for this motion to be heard pursuant to the court's normal schedule, which requires at least 28 days' advance notice of a hearing, followed by additional time for the court to arrive at and draft a decision, and for that decision to be complied with, e.g., by the production of documents.  Accordingly, we intend to propose the following expedited briefing schedule:  we make the motion on or before December 10; MediaDefender files and serves all papers in opposition to that motion on or before December 17; we file and serve all reply papers in further support of the motion on or before December 22; and the Court will schedule a hearing on the motion as soon as possible after that.  Please let us know whether you will stipulate to this briefing schedule, so that we may present it to the court together with our motion papers.

Many thanks,
Dan Kozusko

Dan C. Kozusko
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8694 (phone)
(212) 728-9694 (fax)
dkozusko@willkie.com

-----Original Message-----
From: Kozusko, Dan
Sent: Friday, December 03, 2010 3:38 PM
To: 'Dimitri Villard'
Cc: Teri Rowland; Mundiya, Tariq
Subject: RE: Response

Mr. Villard:

In light of your continued refusal to produce documents to us, which are clearly relevant to the six factors that the Court must take into account in determining the amount of statutory damages that plaintiffs may recover for copyright infringement, Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010), we are filing a motion to compel.  The documents in your clients' possession also go to the issue of when the plaintiffs' copyrighted works were first infringed.  Your confidentiality

1

**Exhibit 13**
**Page 492**

concerns are without merit, given the entry of a protective order. Any privilege assertions are also without merit in light of the nature of the documents sought.

MediaDefender's conduct is especially egregious because your colleague, Mike Allen, represented to us -- not once, but twice -- that a full set of documents responsive to the subpoena had been collected and were ready to be sent out to us immediately via FedEx. At no time during those discussions did Mr. Allen or anyone else at MediaDefender ever interpose any objection to the Subpoena. Rather, it was not until more than a month after we served the Subpoena, well past the deadline for MediaDefender to object, that MediaDefender changed course abruptly and resisted production of even a single document on the basis of relevance and confidentiality. As shown above and in my prior communications, both of those objections, besides being untimely under Rule 45, are without merit, in any event.

The Magistrate Judge overseeing the action has recently ordered production of documents from another third party. Accordingly, there is no basis for MediaDefender's contention that concededly responsive documents in its possession, custody, or control are not relevant to the issues to be tried before Judge Wood.

Equally meritless is your unsubstantiated assertion that the protective order entered by the Court is somehow insufficient to satisfy MediaDefender's confidentiality concerns with respect to documents responsive to the Subpoena, especially given that plaintiffs, the counterparties to those contracts, have already produced confidential and proprietary information pursuant to the terms of the protective order, which permits producing parties to designate appropriate documents as "confidential" or "attorneys' eyes only" (Protective Order ¶ 1). See, e.g., In re McKesson Corp., 264 F.R.D. 595, 602-03 (N.D. Cal. 2009) (overruling confidentiality objections and granting motion to compel non-party to comply with subpoena because "the protective order … currently in place" permits the producing party "to designate documents either 'confidential' or … 'attorneys' eyes only'" and that "protection is sufficient"); Gomez v. J.R. Hycee Conveyor Co., Inc., No. CV 06-2827, 2008 U.S. Dist. LEXIS 570, at *3 (E.D.N.Y. Jan. 3, 2008) (denying UPS's motion to quash non-party subpoena because "[defendant] Hycee's proposal to enter into a protective order limiting the use of the documents produced to this litigation and requiring their return at the conclusion of this litigation, adequately addresses UPS's interest in keeping its proprietary information confidential").

As for your query on whether we have located case law "where courts have NOT required such production," I can confirm to you that we complied in full with our obligations under Rule 11 prior to serving the Subpoena. To the extent that you believe case law may exist to support the position that MediaDefender has taken in response to the Subpoena, it the obligation of MediaDefender and its counsel to perform that research and, if necessary, bring any pertinent authorities to the Court's attention in connection with a motion to compel.

Lastly, any suggestion that Defendants have somehow changed positions improperly here is meritless; to the contrary, Defendants have requested consistently that MediaDefender produce

2

**Exhibit 13**
**Page 493**

documents responsive to the Subpoena.  Moreover, this suggestion rings especially hollow in light of MediaDefender's own conduct here.


Accordingly, we reiterate our request that MediaDefender comply promptly with its obligations under the Subpoena by producing all responsive documents in its possession, custody, or control and, once that production is complete, having a representative appear for deposition.  We are, of course, willing to work with you to schedule a mutually convenient time during the discovery period (recently extended to the end of January 2011) for that deposition to take place.  In the event that MediaDefender chooses not to comply with its obligations under the Subpoena, we will move to compel.


Regards,

Dan Kozusko

Dan C. Kozusko
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8694 (phone)
(212) 728-9694 (fax)
dkozusko@willkie.com

-----Original Message-----
From: Dimitri Villard [mailto:dvillard@peermediatech.com]
Sent: Thursday, November 04, 2010 5:17 PM
To: Kozusko, Dan
Cc: Teri Rowland
Subject: RE: Response


Mr. Kozusko,


With all due respect it seems to me that having tried to justify your subpoena on grounds we don't believe are applicable to MediaDefender, you are now attempting to do so on other, new grounds. I would be interested to know what case law there is to indicate that the documents you seek are discoverable. For that matter, have you researched to see where courts have NOT required such production?

3

**Exhibit 13**
**Page 494**

Sincerely,


Dimitri Villard, CEO

Peer Media Technologies, Inc.

9046 Lindblade Street

Culver City CA 90232

Tel 310.734.4551 direct * 310.956-3300 main

www.peermediatech.com

dvillard@peermediatech.com




From: Kozusko, Dan [mailto:dkozusko@willkie.com]
Sent: Wednesday, November 03, 2010 7:14 AM
To: dvillard@peermediatech.com
Cc: Teri Rowland
Subject: RE: Response



Mr. Villard,


1.  We expect MediaDefender to produce emails in its possession, custody, or control that are responsive to the subpoena.


2.  We do not understand your assertion that MediaDefender's contracts with one or

more plaintiffs or the RIAA during the relevant time period are not responsive to the Subpoena. In particular, any such contracts for anti-piracy services that concern, or in any way relate to, one or more of the Songs listed in Exhibit 1 to the Subpoena are plainly responsive, as are any communications or other documents concerning those contracts. For example, if MediaDefender performed antipiracy services with regard to one or more of those Songs, the contacts you mention, together with any related communications and other documentation, would be responsive to the Subpoena. Those documents likewise are the proper subject of discovery here in that they are directly relevant to, inter alia, the conduct and attitude of the parties, including any efforts taken by plaintiffs or the RIAA to mitigate damages through antipiracy efforts.

    3. The protective order entered by the Court is more than sufficient to protect the confidentiality of any documents produced by MediaDefender here, including service contracts. Indeed, plaintiffs -- the counter-parties to these contracts -- and numerous non-parties have already produced a significant amount of confidential and proprietary information pursuant to that order.

    If MediaDefender chooses not to comply with its obligations under the subpoena, including the production of all responsive documents and appearing for deposition, we will have no alternative but to move to compel.

    Dan C. Kozusko
    Willkie Farr & Gallagher LLP
    787 Seventh Avenue
    New York, New York 10019
    (212) 728-8694 (phone)
    (212) 728-9694 (fax)
    dkozusko@willkie.com

    -----Original Message-----
    From: Dimitri Villard [mailto:dvillard@peermediatech.com]
    Sent: Monday, November 01, 2010 12:54 PM
    To: Kozusko, Dan
    Cc: Teri Rowland
    Subject: Response

    Dear Mr. Kozusko:

    I am the CEO of Peer Media Technologies, Inc., parent of and successor to
MediaDefender, Inc. , and I am responding to your emails to Ms. Teri Rowland of our company.

**Exhibit 13**
**Page 496**

(1)    MediaDefender obviously can't produce documents and emails that it no longer possesses.  That does not change regardless of what someone finds through a "simple internet search." We do not archive emails.

(2)    The grounds that you cite for relevance do not appear to apply to MediaDefender.  Your October 28th letter indicates that Judge Freeman already ruled that "licensing agreements between plaintiffs and third parties such as MediaDefender and any related communications are relevant" for determining the amount of statutory damages.  However, that ruling concerned production by Plaintiffs of their "actual and potential licensing arrangements" which "might shed light on the amount of profits that Plaintiffs would have made, had Defendants' customers downloaded Plaintffs' copyrighted works from a source authorized by Plaintiffs."  You and LimeWire apparently confuse MediaDefender with being such a "licensee."  It is not. Media Defender only provides anti-piracy services to clients.

(3)    Despite the Protective Order, we are concerned that the information contained in our confidential service agreements might nevertheless become known, as is often the case, and we will oppose any demand to produce them on the grounds of confidentiality as well as relevance as stated in (2), above. I suspect that the companies with whom we are or were contracted might well oppose such document production as well, and we have a duty to inform them of such demand so that they may take appropriate legal action if they wish.


Sincerely,


Dimitri Villard, CEO

Peer Media Technologies, Inc.

9046 Lindblade Street

Culver City CA 90232

Tel 310.734.4551 direct * 310.956-3300 main

www.peermediatech.com

dvillard@peermediatech.com

**Exhibit 13**
**Page 497**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT 14

| From: | Dimitri Villard [dvillard@peermediatech.com] |
|---|---|
| Sent: | Tuesday, December 07, 2010 4:03 PM |
| To: | Kozusko, Dan |
| Cc: | Teri Rowland; Mundiya, Tariq |
| Subject: | RE: Response |

Dear Mr. Kozusko:

First of all , let me say that since I became aware of your request when I returned from out-of-town, I have dealt with this matter in a timely, responsible manner. I am the only person in this company who can deal with this matter; Mike Allen is an office worker on our clerical staff and not authorized to do anything. In fact what he gathered is probably not even relevant to what I surmise you are looking for.

I want to make sure you understand that we may not have what you are looking for, if it has to do with "when the plaintiff's copyrighted works were first infringed." The records we could produce, if we were to do so, would be the contracts between MediaDefender, Inc. and the record labels, which deal with anti-piracy services on a highly technical level. As far as I can tell, we haven't tracked early leaks, for example, by specific P2P client so we would not be able to say if such a leak – to the extent we even still have any historical records of such – were via a LimeWire client or something else.

I'm sure you will appreciate our extreme reluctance to reveal our secret and proprietary anti-piracy techniques to an adjudicated pirate.

Since I don't believe we can really help you or the Court deal with the damages issue I hope that you will reconsider your request. In any event, I don't know what Court you are referring to, what that Court's schedule is, and why we should stipulate to anything inasmuch as we hope you will abandon this request altogether.

Sincerely,

Dimitri Villard, CEO

1

**Exhibit 14**
**Page 499**

Peer Media Technologies, Inc.

9046 Lindblade Street

Culver City CA 90232

Tel 310.734.4551 direct * 310.956-3300 main

www.peermediatech.com

dvillard@peermediatech.com

From: Kozusko, Dan [mailto:dkozusko@willkie.com]
Sent: Tuesday, December 07, 2010 1:31 PM
To: Dimitri Villard
Cc: Teri Rowland; Mundiya, Tariq
Subject: RE: Response

Mr. Villard,

I write regarding our motion to compel.  Given that the close of fact discovery is fast approaching, there is not enough time for this motion to be heard pursuant to the court's normal schedule, which requires at least 28 days' advance notice of a hearing, followed by additional time for the court to arrive at and draft a decision, and for that decision to be complied with, e.g., by the production of documents.  Accordingly, we intend to propose the following expedited briefing schedule:  we make the motion on or before December 10; MediaDefender files and serves all papers in opposition to that motion on or before December 17; we file and serve all reply papers in further support of the motion on or before December 22; and the Court will schedule a hearing on the motion as soon as possible after that.  Please let us know whether you will stipulate to this briefing schedule, so that we may present it to the court together with our motion papers.

Many thanks,

Dan Kozusko

Dan C. Kozusko

**Exhibit 14**
**Page 500**

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8694 (phone)
(212) 728-9694 (fax)
dkozusko@willkie.com

-----Original Message-----
From: Kozusko, Dan
Sent: Friday, December 03, 2010 3:38 PM
To: 'Dimitri Villard'
Cc: Teri Rowland; Mundiya, Tariq
Subject: RE: Response

Mr. Villard:

In light of your continued refusal to produce documents to us, which are clearly relevant to the six factors that the Court must take into account in determining the amount of statutory damages that plaintiffs may recover for copyright infringement, Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010), we are filing a motion to compel. The documents in your clients' possession also go to the issue of when the plaintiffs' copyrighted works were first infringed. Your confidentiality concerns are without merit, given the entry of a protective order. Any privilege assertions are also without merit in light of the nature of the documents sought.

MediaDefender's conduct is especially egregious because your colleague, Mike Allen, represented to us -- not once, but twice -- that a full set of documents responsive to the subpoena had been collected and were ready to be sent out to us immediately via FedEx. At no time during those discussions did Mr. Allen or anyone else at MediaDefender ever interpose any objection to the Subpoena. Rather, it was not until more than a month after we served the Subpoena, well past the deadline for MediaDefender to object, that MediaDefender changed course abruptly and resisted production of even a single document on the basis of relevance and confidentiality. As shown above and in my prior communications, both of those objections, besides being untimely under Rule 45, are without merit, in any event.

The Magistrate Judge overseeing the action has recently ordered production of documents from another third party. Accordingly, there is no basis for MediaDefender's contention that concededly responsive documents in its possession, custody, or control are not relevant to the issues to be tried before Judge Wood.

Equally meritless is your unsubstantiated assertion that the protective order entered by the Court is somehow insufficient to satisfy MediaDefender's confidentiality concerns with respect to documents responsive to the Subpoena, especially given that plaintiffs, the counterparties to those contracts, have already produced confidential and proprietary information pursuant to the terms of the protective order, which permits producing parties to designate appropriate documents as "confidential" or "attorneys' eyes only" (Protective Order ¶ 1). See, e.g., In re McKesson Corp., 264 F.R.D. 595, 602-03 (N.D. Cal. 2009) (overruling confidentiality objections and granting motion to compel non-party to comply with subpoena because "the protective order … currently in place" permits the producing party "to designate documents either 'confidential' or … 'attorneys' eyes

Exhibit 14
Page 501

only'" and that "protection is sufficient"); Gomez v. J.R. Hycee Conveyor Co., Inc., No. CV 06-2827, 2008 U.S. Dist. LEXIS 570, at *3 (E.D.N.Y. Jan. 3, 2008) (denying UPS's motion to quash non-party subpoena because "[defendant] Hycee's proposal to enter into a protective order limiting the use of the documents produced to this litigation and requiring their return at the conclusion of this litigation, adequately addresses UPS's interest in keeping its proprietary information confidential").

As for your query on whether we have located case law "where courts have NOT required such production," I can confirm to you that we complied in full with our obligations under Rule 11 prior to serving the Subpoena.  To the extent that you believe case law may exist to support the position that MediaDefender has taken in response to the Subpoena, it the obligation of MediaDefender and its counsel to perform that research and, if necessary, bring any pertinent authorities to the Court's attention in connection with a motion to compel.

Lastly, any suggestion that Defendants have somehow changed positions improperly here is meritless; to the contrary, Defendants have requested consistently that MediaDefender produce documents responsive to the Subpoena.  Moreover, this suggestion rings especially hollow in light of MediaDefender's own conduct here.

Accordingly, we reiterate our request that MediaDefender comply promptly with its obligations under the Subpoena by producing all responsive documents in its possession, custody, or control and, once that production is complete, having a representative appear for deposition.  We are, of course, willing to work with you to schedule a mutually convenient time during the discovery period (recently extended to the end of January 2011) for that deposition to take place.  In the event that MediaDefender chooses not to comply with its obligations under the Subpoena, we will move to compel.

Regards,

Dan Kozusko

Dan C. Kozusko
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8694 (phone)
(212) 728-9694 (fax)
dkozusko@willkie.com

-----Original Message-----
From: Dimitri Villard [mailto:dvillard@peermediatech.com]
Sent: Thursday, November 04, 2010 5:17 PM
To: Kozusko, Dan
Cc: Teri Rowland
Subject: RE: Response

Mr. Kozusko,

**Exhibit 14**
**Page 502**

With all due respect it seems to me that having tried to justify your subpoena on grounds we don't believe are applicable to MediaDefender, you are now attempting to do so on other, new grounds. I would be interested to know what case law there is to indicate that the documents you seek are discoverable. For that matter, have you researched to see where courts have NOT required such production?

Sincerely,

Dimitri Villard, CEO

Peer Media Technologies, Inc.

9046 Lindblade Street

Culver City CA 90232

Tel 310.734.4551 direct * 310.956-3300 main

www.peermediatech.com

dvillard@peermediatech.com

From: Kozusko, Dan [mailto:dkozusko@willkie.com]
Sent: Wednesday, November 03, 2010 7:14 AM
To: dvillard@peermediatech.com
Cc: Teri Rowland
Subject: RE: Response

Mr. Villard,

5

**Exhibit 14**
**Page 503**

1.  We expect MediaDefender to produce emails in its possession, custody, or control that are responsive to the subpoena.

2.  We do not understand your assertion that MediaDefender's contracts with one or more plaintiffs or the RIAA during the relevant time period are not responsive to the Subpoena.  In particular, any such contracts for anti-piracy services that concern, or in any way relate to, one or more of the Songs listed in Exhibit 1 to the Subpoena are plainly responsive, as are any communications or other documents concerning those contracts.  For example, if MediaDefender performed antipiracy services with regard to one or more of those Songs, the contacts you mention, together with any related communications and other documentation, would be responsive to the Subpoena.  Those documents likewise are the proper subject of discovery here in that they are directly relevant to, inter alia, the conduct and attitude of the parties, including any efforts taken by plaintiffs or the RIAA to mitigate damages through antipiracy efforts.

3.  The protective order entered by the Court is more than sufficient to protect the confidentiality of any documents produced by MediaDefender here, including service contracts.  Indeed, plaintiffs -- the counter-parties to these contracts -- and numerous non-parties have already produced a significant amount of confidential and proprietary information pursuant to that order.

If MediaDefender chooses not to comply with its obligations under the subpoena, including the production of all responsive documents and appearing for deposition, we will have no alternative but to move to compel.

Dan C. Kozusko
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8694 (phone)
(212) 728-9694 (fax)
dkozusko@willkie.com

-----Original Message-----
From: Dimitri Villard [mailto:dvillard@peermediatech.com]
Sent: Monday, November 01, 2010 12:54 PM
To: Kozusko, Dan
Cc: Teri Rowland
Subject: Response

6

**Exhibit 14**
**Page 504**

Dear Mr. Kozusko:


I am the CEO of Peer Media Technologies, Inc., parent of and successor to MediaDefender, Inc. , and I am responding to your emails to Ms. Teri Rowland of our company.


(1)    MediaDefender obviously can't produce documents and emails that it no longer possesses.  That does not change regardless of what someone finds through a "simple internet search." We do not archive emails.

(2)    The grounds that you cite for relevance do not appear to apply to MediaDefender.  Your October 28th letter indicates that Judge Freeman already ruled that "licensing agreements between plaintiffs and third parties such as MediaDefender and any related communications are relevant" for determining the amount of statutory damages.  However, that ruling concerned production by Plaintiffs of their "actual and potential licensing arrangements" which "might shed light on the amount of profits that Plaintiffs would have made, had Defendants' customers downloaded Plaintffs' copyrighted works from a source authorized by Plaintiffs."  You and LimeWire apparently confuse MediaDefender with being such a "licensee."  It is not. Media Defender only provides anti-piracy services to clients.

(3)    Despite the Protective Order, we are concerned that the information contained in our confidential service agreements might nevertheless become known, as is often the case, and we will oppose any demand to produce them on the grounds of confidentiality as well as relevance as stated in (2), above. I suspect that the companies with whom we are or were contracted might well oppose such document production as well, and we have a duty to inform them of such demand so that they may take appropriate legal action if they wish.


Sincerely,


Dimitri Villard, CEO

Peer Media Technologies, Inc.

9046 Lindblade Street

Culver City CA 90232

Tel 310.734.4551 direct * 310.956-3300 main

www.peermediatech.com

**Exhibit 14
Page 505**

dvillard@peermediatech.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*